Charles **FINDEISEN,**
**Plaintiff-Appellant,**

v.

**NORTH EAST INDEPENDENT**
**SCHOOL DISTRICT, et al.,**
**Defendants-Appellees.**

No. 83–1609.

United States Court of Appeals,
Fifth Circuit.

Dec. 26, 1984.

Rehearing Denied Jan. 23, 1985.

Garwood, Circuit Judge, filed concurring opinion.

Catherine Quinones, San Antonio, Tex., for plaintiff-appellant.

Foster, Lewis, Langley, Gardner & Banack, Inc., William T. Armstrong, III, San Antonio, Tex., for defendants-appellees.

Before POLITZ, WILLIAMS and GARWOOD, Circuit Judges.

POLITZ, Circuit Judge:

Charles Findeisen filed suit under 42 U.S.C. § 1983 against his former employer, the North East Independent School District (NEISD), alleging a constructive discharge from his position as a tenured school teacher. Claiming a denial of due process, Findeisen contends that he was entitled to a pretermination administrative hearing and an opportunity to challenge and answer any charges made against him. The district court granted NEISD's motion for summary judgment, noting only that "the courts of the State of Texas provide full and due process for plaintiff's breach of contract claim herein." Concluding that Findeisen has alleged a cause of action cognizable under § 1983 and that the record reflects several disputed issues of material fact, we vacate the summary judgment and remand for further proceedings.

*Facts*

We glean the following facts from the limited record before us. In 1977 Findeisen was hired by NEISD and assigned to teach science at Churchill High School. He then held a Texas Teacher Certificate in science composite, physical science, biology and chemistry. By April 1980 Findeisen had a continuing contract, the effective equivalent of a tenured position.[1]

In September 1980, NEISD transferred Findeisen from Churchill High School to Garner Middle School with teaching assignments in both science and math. Preferring to teach science exclusively at the high school level, Findeisen filed a grievance which proved unsuccessful at three successive procedural stages. At the final stage, Findeisen claimed that NEISD representatives promised him a science position at Churchill High as soon as practical, and gave him assurances of a notification of

1. Tex.Educ.Code Ann. § 13.107 provides:

Each teacher with whom a continuing contract has been made as herein provided shall be entitled to continue in his position or a position with the school district, at a salary authorized by the board of trustees of said district complying with the minimum salary provisions of the foundation aid law, for future school years without the necessity for annual nomination or reappointment, until such time as the person: (1) resigns, or retires under the teacher retirement system;

(2) is released from employment by the school district at the end of a school year because of necessary reduction of personnel as herein defined; (3) is discharged for lawful cause, as defined in Section 13.109 of this code and in accordance with the procedures hereinafter provided; (4) is dismissed at the end of a school year for any reason as set out in Section 13.110 of this code and pursuant to the procedures hereinafter provided in such cases; or (5) is returned to probationary status, as authorized in Section 13.110 of this code.

any science position vacancy in any of the district's senior high schools.

On January 19, 1981, NEISD transferred Findeisen from Garner Middle School to the math department at Churchill High. Because Findeisen was not certified to teach math, NEISD had to obtain a Temporary Classroom Assignment Permit which authorized Findeisen to teach math at Churchill High for the remainder of the 1980–81 school year. NEISD's personnel director informed Findeisen that employment at Churchill High for the 1981–82 term would be contingent on his successful completion during the summer of six semester hours of math courses, credits required for renewal of the Temporary Permit. Findeisen was to notify NEISD of his efforts. The personnel director purportedly also advised Findeisen that if the math credits were not secured NEISD would assign him to a science position somewhere within the district.

In mid-June 1981 the principal of Wood Middle School invited Findeisen to interview for a science position. At that time Findeisen was a math teacher at Churchill High and declined the invitation. Findeisen thereafter enrolled in two math courses at San Antonio College but voluntarily withdrew on July 29, 1981 for personal reasons.

On August 19, 1981 Findeisen dispatched the following memorandum to the NEISD personnel director:

> This memo is to confirm that I have not completed six hours of math. I request placement into a science teaching position should one become available in the district. If no position becomes available you may consider this my resignation.

Of even date the personnel director responded:

> This is to acknowledge receipt of your letter of resignation as a math teacher dated August 19. We will recommend to the Board of Trustees that it be accepted effective with the end of the 1980–81 school year, May 30. If a science position opens in the District, we will consider you along with other applicants.

On September 10, 1981, the NEISD Trustees formally accepted Findeisen's resignation.

It appears that NEISD did not offer Findeisen a science position although at least one vacancy occurred between August 19, 1981 and September 10, 1981. Sometime during the fall of 1981 Findeisen requested an administrative hearing before the Board of Trustees. The request was denied.

Findeisen contends that his August 19, 1981 memorandum was a contingent resignation which was submitted in return for the personnel director's promise of the next available science position. Findeisen maintains that the personnel director threatened a discharge if he failed to submit the contingent resignation. He further contends that a high-ranking NEISD official assured him the NEISD always considered teachers within the system before hiring outsiders but that this was not done with respect to the opening occurring after the tender of his contingent resignation. In sum, Findeisen contends that his resignation was coerced and that considering the totality of the circumstances, his contingent resignation was tantamount to a constructive discharge from his position as a tenured teacher.

### Analysis

The threshold consideration, in light of the trial court's abbreviated reasons for decision, is whether Findeisen has stated a procedural due process claim under § 1983, particularly in light of the Supreme Court's teachings in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Specifically, has Findeisen alleged a deprivation under color of state law, of a federally protected property right, sans due process?

■ It seems nigh unto superfluous to remind that § 1983, in conjunction with its jurisdictional counterpart, 28 U.S.C. § 1343(3), provides a federal civil remedy in federal court for violations, under color of state law, of the rights, privileges and immunities secured by the Constitution and

laws of the United States. The statute extends protection to all rights guaranteed by the fourteenth amendment. *Home Tel. & Tel. Co. v. Los Angeles*, 227 U.S. 278, 33 S.Ct. 312, 57 L.Ed. 510 (1913). Section 1983 provides an independent federal remedy "regardless of the availability of an adequate remedy under state law," *Brantley v. Surles*, 718 F.2d 1354, 1358 (5th Cir.1983), *citing Monroe v. Pape*, 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961), in which the Supreme Court stated:

> It is no answer that the State has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy, and the latter need not first be sought and refused before the federal one is involved.

Accordingly, the fact that a state actor's acts may be remedied by recourse to state law does not negate the availability of the § 1983 remedy, provided the victim alleges and proves a violation, under color of state law, of a federally protected right.

 Whether Findeisen has alleged a cognizable violation of his fourteenth amendment right to procedural due process involves a dual inquiry: was he deprived of a protected property interest and, if so, was the deprivation accomplished without adherence to due process minimums? *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). As the Supreme Court there observed, "the hallmark of property ... is an individual entitlement grounded in state law, which cannot be removed except 'for cause'." Id. at 430, 102 S.Ct. at 1155.[2] Findeisen's individual entitlement to continued employment as a public school teacher was grounded in Texas' tenure law for public school teachers. Section 13.107 of the Tex-

as Education Code makes abundantly clear that a teacher with a continuing contract, such as Findeisen, can be discharged only "for lawful cause" or "because of necessary reduction of personnel."[3] Findeisen therefore had a constitutionally protected property interest in his continued employment by NEISD which could be terminated only in accordance with the recognized principles of due process, *i.e.*, adequate and timely notice and a meaningful opportunity to be heard. *See Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

The second half of the inquiry requires more analysis. The core guarantee of procedural due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). Prior to 1981, the Supreme Court consistently interpreted this due process guarantee to require that, except in "extraordinary situations where some valid governmental interest is at stake that justified postponing the hearing until after the event," *Board of Regents v. Roth*, 408 U.S. at 570 n. 7, 92 S.Ct. at 2705 n. 7, some form of hearing must be provided before an individual can be finally deprived of a federally protected property interest. *See, e.g. Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). The "right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society." *Joint Anti-Fascist Com-*

---

**2.** In its now classic definition of property within the meaning of the due process clause of the fourteenth amendment, the Supreme Court stated:

Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

**3.** The Texas statute provides further that, before a tenured teacher shall be dismissed for cause, the school district's board of trustees shall notify the teacher in writing of the charges against him and shall provide the teacher with an opportunity to be heard at an administrative hearing. Tex.Educ.Code Ann. § 13.111–12.

*mittee v. McGrath*, 341 U.S. 123, 168, 71 S.Ct. 624, 646, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring). In the same vein, the Supreme Court held in *Perry v. Sindermann* that a tenured public school teacher could not be dismissed without notice of the precipitating charges and a pretermination administrative hearing at which the teacher was given the opportunity to challenge those charges. The Court recognized that the predeprivation notice and hearing were necessary prophylactics against a wrongful discharge.

*Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), necessitated a re-examination of this line of jurisprudence. In *Parratt* the Court concluded that due process did not necessarily mandate a predeprivation hearing when an available post-deprivation state tort remedy provided adequate redress. The post-deprivation tort remedy weighed into the due process calculus and no federally protected property interest, cognizable under § 1983, was implicated.[4]

The *Parratt* court carefully distinguished between situations in which "due process requires a predeprivation hearing before the State [may interfere] with any liberty or property interest" and situations in which "either the necessity of quick action by the State or the impracticability of providing any meaningful predeprivation process can, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, satisfy the requirements of procedural due process." 451 U.S. at 537, 540, 101 S.Ct. at

1914–1915. Four factors are discernible. First, if the deprivation of the property interest is authorized by established state procedures, a predeprivation hearing is essential to ensure conformity with those procedures. 451 U.S. at 538, 101 S.Ct. at 1914. Second, the requirement of a predeprivation hearing is directly related to the impact of the deprivation on the party's livelihood. *Id.* See *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). Third, the imperative of quick action by the state is a weighty consideration. 451 U.S. at 538–39, 101 S.Ct. at 1914–15. As a marked example, in *North American Cold Storage Co. v. Chicago*, 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908), the Court upheld the right of a state to seize and destroy a shipment of rotten food without delaying for a preseizure hearing. The state's interest in immediately responding to a perceived public health emergency outweighed the danger of erroneous destruction of property. Finally, the imperative of a predeprivation hearing wanes when impractical, as in a negligent tort situation, particularly when the state provides an adequate post-deprivation tort remedy. *Parratt* fit particularly well into this fourth area. The act complained of there was tortious; it was the result of a negligent act, neither programmed specifically nor the product of systemic default. In *Logan,* the Court capsulated the *Parratt* factors and observed that "absent the necessity of quick action by the State or the impracticality of providing any predeprivation process, a post-deprivation hearing [is] constitutionally inadequate."[5]

---

**4.** In *Parratt,* a Nebraska state prisoner's hobby materials worth $23.50 were negligently mislaid by prison officials. Although the Supreme Court recognized that this negligent act constituted a deprivation of property under color of state law, the Court held that the prisoner had failed to allege a due process violation cognizable under § 1983 because the tort law of the State of Nebraska provided an adequate post-deprivation remedy. The Court thus held that Nebraska's common law provided the required "due process of law" for this deprivation of property and, therefore, that there had been no violation of the fourteenth amendment.

**5.** It has been suggested that *Parratt,* by making the availability of a state tort remedy relevant to the viability of a § 1983 claim, subverts the *Monroe v. Pape* rule that § 1983 provides a ready remedy for all due process violations regardless of the availability of a state tort remedy. We do not agree. *Parratt* merely limits the group of claims that *allege* procedural due process violations; once a bona fide procedural due process claim is asserted, the *Monroe v. Pape* rule applies. If the post-deprivation state tort remedy is inadequate under *Parratt* to constitute "due process of law," then *Monroe v. Pape* permits the person deprived of property to proceed

■ Applying these four elements or factors to the case at bar, we conclude and hold that Findeisen's alleged constructive discharge claim sets forth the type of deprivation of property for which due process requires a predeprivation hearing. First, Texas law sets forth the substantive and procedural requirements for dismissal of a tenured teacher. A pretermination hearing is essential to assure that the state's statutory guidelines are followed. Second, the action affects Findeisen's professional standing and livelihood. The termination of a tenured public school teacher adversely impacts on the teacher's personal and professional standing in both the educational community and the greater societal community. Findeisen's claim is not for a few dollars worth of hobby goods which were negligently lost; it involves his career. Third, there was no necessity for hasty action; no emergency existed. Far from the threat occasioned by the corrupt food in *North American Cold Storage Co.*, this record does not even reflect a situation in which a student or teacher was threatening to disrupt the orderly educational processes. *Cf. Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). Finally, absent the occasional emergency, a school board can easily hold a meaningful predeprivation hearing to properly consider whether to discharge a tenured teacher. What might be considered a pressing concern may be handled by the simple expedient of a leave of absence pending a reasonably scheduled hearing. There is not the semblance of impracticability of such a hearing reflected in the record before us, nor is any suggested.

In summation then, one threatened with the deprivation, under color of state law, of a federally protected property interest must be given "an opportunity ... at a meaningful time and in a meaningful ... manner for [a] hearing appropriate to the nature of the case." *Logan v. Zimmerman Brush Co.*, 455 U.S. at 437, 102 S.Ct. at 1158. Where the property interest is the employment of a tenured public school teacher the teacher must be provided timely notice and an opportunity to answer charges so as to minimize the likelihood of an erroneous discharge. In the context of the discharge of a tenured public school teacher, we perceive no *Parratt*-directed change in the essential teachings of *Roth, Sindermann* [6] and their progeny.

### Summary Judgment

■ Rule 56 of the Federal Rules of Civil Procedure provides that a proper motion for summary judgment shall be granted forthwith "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As designed, summary judgment is a potent weapon, but "courts must be mindful of its aims and targets and beware of overkill in its use." *Brunswick Corp. v. Vineberg*, 370 F.2d 605, 612 (5th Cir.1967). Summary judgment is appropriate only where no genuine issue of material fact exists. The moving party bears the burden of proof in that regard and any doubt as to the existence of a disputed fact must be resolved against the moving party. *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406 (5th Cir. 1980). Courts should be particularly circumspect where, as here, the case is scheduled for trial by jury.

■ A review of the record quickly discloses several genuine issues of fact which are material to Findeisen's constructive discharge claim. The pre-trial order specifically lists a dozen contested issues of fact

---

under § 1983 without reference to the state tort remedy.

**6.** The district court opined in granting the motion for summary judgment that "the Courts of the State of Texas provide full and due process for plaintiff's breach of contract claim." Be-

cause of our disposition of the *Parratt* issue, we do not decide whether *Parratt* has any application to a situation where the post-deprivation state common law remedy that purportedly constitutes "due process of law" is an action in contract rather than in tort.

including: (1) whether a NEISD official warned Findeisen that filing a grievance to challenge his transfer to Garner Middle School would jeopardize his teaching position; (2) whether the NEISD personnel director threatened to terminate Findeisen if Findeisen failed to submit the August 19, 1981 contingent resignation; (3) whether Findeisen told the principal of Wood Middle School that he was interested only in a high school position; and (4) whether a NEISD official assured Findeisen that NEISD would exhaust the supply of available teachers within its internal pool before hiring outside the system. The trial court inappropriately intruded upon the function of the factfinder, here a jury, by granting NEISD's motion for summary judgment. In so concluding we intimate no suggestion as to the adequacy or validity of Findeisen's claim of constructive discharge. That initial decision belongs first to the trial court and jury.

The summary judgment in VACATED and the matter is REMANDED for further proceedings.

GARWOOD, Circuit Judge, concurring.

I concur. The present summary judgment record does not entirely exclude the possibility that plaintiff's resignation was procured and accepted by the District essentially in bad faith and under false pretenses in order to terminate his employment for disciplinary-type reasons that would otherwise require a hearing for such a tenured teacher. Were that the situation, more than an ordinary breach of contract[1] would arguably be involved and present decisional law would seemingly entitle plaintiff to relief under section 1983.

I am moved to say, however, that to the extent this result is based solely on the lack of "predeprivation" procedures, it appears to me to be most regrettable. There is here no claimed invasion of any substantive constitutional right. Nor is any liberty or reputational interest implicated. *See Campos v. Guillot,* 743 F.2d 1123 (5th Cir. 1984). We are dealing only with the adequacy of state procedures to protect property. If, as may indeed be the case here, wholly adequate and previously well established state procedures exist under which the School District's actions may be subsequently challenged *"de novo"* and full recovery had for any economic loss, it is difficult for me to see why other process should be constitutionally due for the protection of this character of "property." This is the type of protection which the law has traditionally given for the vindication of the "property" rights of a private employee whose status is protected by a long-term employment contract. The implicit judgment has been that this is sufficient and appropriate.[2] The tenured employment relationship lacks the possessory and transferability rights the invasion of which may enhance the importance of predeprivation process in respect to other kinds of property. We recognize that the School District may employ the expedient of a leave of absence, presumably with pay, before affording process. By requiring "predeprivation" process, then, we are essentially protecting no more than the continuation of compensation pending resolution of the dispute, in preference to subsequent recovery under established procedures of back pay with interest and other appropriate damages and relief. That protection of this special, predeprivation kind is constitutionally required across the board for all

1. *Cf. Casey v. Depetrillo,* 697 F.2d 22 (1st Cir. 1983); *Vail v. Board of Education of Paris Union School District No. 95,* 706 F.2d 1435, 1449 (7th Cir.1983) (dissenting opinion), *affirmed by an equally divided court,* —— U.S. ——, 104 S.Ct. 2144, 80 L.Ed.2d 377 (1984).

2. Of course, the due process clause operates on states, not private employers, but the present question is not whether due process is required, but rather what character of process is due.

The private analogy is instructive as we deal here with state action in a proprietary, rather than a sovereign or governmental, capacity. It is difficult to understand why what has long been regarded as sufficient process to fairly protect the employment property rights of the tenured chief engineer at the local private junior college is insufficient to similarly protect the same rights of his counterpart at a comparable public institution.

state employees with any type of tenure or employment contract seems unrealistic and not in keeping with our traditional expectations and understandings.[3] In this context, the strict "predeprivation" rule will also frequently result in holding unconstitutional systems which *in fact* provide *more* due process protection for this character of property right than that deemed sufficient under the predeprivation jurisprudence. These anomalies, however, appear sufficiently enmeshed in the current tangled web of the jurisprudence on this subject as to be beyond attempted amelioration by a panel of this Court.

---

**3.** *Cf. Goldberg v. Kelly,* 397 U.S. 254, 264, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970) ("Thus the crucial factor in this context—a factor not present in the case of ... the discharged government employee ...—is that termination of aid pending resolution of a controversy over eligibility may deprive an *eligible* [welfare] recipient of the very means by which to live while he waits."). It may also be noted that what due process protects in this instance is the property right, not the expectation that state-specified procedures will be followed as such. *See Bishop v. Wood,* 426 U.S. 341, 345, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976) ("... merely conditioning an employee's removal on compliance with certain specified procedures" does not give rise to a property right so as to invoke due process protection); *Wells v. Hico Independent School District,* 736 F.2d 243, 253 n. 13 (5th Cir.1984).