799 F.2d 976
 41 Fair Empl.Prac.Cas. 1527,
41 Empl. Prac. Dec. P 36,572,
1 Indiv.Empl.Rts.Cas. 808
Zinita P. FOWLER, Plaintiff-Appellee Cross-Appellant,
v.
CARROLLTON PUBLIC LIBRARY and City of Carrollton,
Defendants-Appellants Cross-Appellees.
 No. 85-1148.
 United States Court of Appeals,
Fifth Circuit.
 Sept. 12, 1986.
 
 Robert E. Hager, Dallas, Tex., for defendants-appellants cross-appellees.
 Genice A.G. Rabe, Dallas, Tex., for plaintiff-appellee cross-appellant.
 Appeals from the United States District Court for the Northern District of Texas.
 Before WILLIAMS, GARWOOD and JONES, Circuit Judges.
 EDITH HOLLAN JONES, Circuit Judge:
 
 
 1
 This judgment in this complex lawsuit is REVERSED and REMANDED for a new trial.
 
 
 2
 In the city library of Carrollton, Texas, a petty satrapy appended to the local government, personality conflicts and disagreement over small matters of principle and perquisite festered during 1981-82. Appellee-Cross-Appellant Fowler, hired in 1978 at the age of 58 as the children's librarian and assistant director, was at the center of the vortex. Lauded in the state of Texas as an outstanding children's librarian and particularly popular in Carrollton as a story teller who attracted up to 300 children to the library for her performances, Mrs. Fowler nonetheless fell afoul of her co-workers. Through a series of incidents not necessary to recount but commencing in 1981, she and the library staff, including its director Kenneth Mjaaland, became increasingly disaffected with each other. She was ignored or derided openly by the staff, and Mjaaland argued with her loudly within earshot of library patrons on several occasions. Mrs. Fowler, for her part, regularly registered offense (not publicly) at a number of library administrative practices which she felt were undermining her authority. Mrs. Fowler's discomfiture with her working environment came to a head in February, 1982, when she became incoherent and semi-conscious during a discussion with Mjaaland and a co-worker over a policy difference. She was taken to the hospital, where she remained for three days with a diagnosis of "transient global amnesia." Recuperation at home followed for two weeks. She understood her condition had been induced by stress at work. She feared that further outbreaks of this condition, as well as a possible heart attack or stroke, might result from additional strain, and she so informed Mjaaland upon returning to work March 5.
 
 
 3
 On March 20, Mjaaland humiliated Mrs. Fowler in a public portion of the library, and she immediately went home without his permission, frightened by her inability to control her emotions. Her daughter telephoned Mjaaland the next day, informing him that Mrs. Fowler was ill and would let him know when she would come back to the library. She never did either.
 
 
 4
 The following week, Mrs. Fowler attended the Texas Librarians Conference, where she received an award for being the outstanding children's librarian in the state. Ordinarily, attendance at this convention would have been within the course and scope of her employment at the library. On the preceding Sunday, she and her son-in-law removed from her office at the library some plants, pictures, and personal possessions, although the parties dispute whether her office was "cleaned out" at that time.
 
 
 5
 On March 31, she appeared at Carrollton City Hall to pick up her paycheck, and was at that time informed that she must turn in her keys. It dawned on Mrs. Fowler as she left City Hall that, because of its unusually large amount, this was a severance paycheck.
 
 
 6
 A number of Carrollton residents approached representatives of the City, trying to determine the status of Mrs. Fowler's employment. Finally, on or about May 12, she wrote a letter to the city manager, requesting a meeting with him or city council. At that time, Clonis Luallen, the city manager, informed her that there would be no need for any type of meeting with him or any representative of his office.
 
 
 7
 Mrs. Fowler subsequently applied for work at a number of libraries and at the time of trial was employed at the Akiba Academy in Dallas.
 
 
 8
 Mrs. Fowler's lawsuit was predicated on two causes of action. Pursuant to the Age Discrimination in Employment Act, 29 U.S.C. Secs. 621 et seq., she asserted that she was terminated because of her age and retaliated against for filing an EEOC complaint. Her civil rights action under 42 U.S.C. Sec. 1983 asserted that she was actually or constructively discharged by the City of Carrollton in violation of her right to procedural due process.
 
 
 9
 The jury received special issues only on the Sec. 1983 claim and found that Fowler was "actually or constructively discharged" without just cause, and that she was entitled to receive $25,000 damages for mental anguish and $75,000 for physical pain and suffering proximately caused by the City's failure to accord her a hearing. On posttrial motions the district court denied a motion for judgment n.o.v., refused to add backpay, reinstatement or frontpay to Fowler's award, and refused to reconsider a directed verdict on her claims under the Age Discrimination in Employment Act.
 
 
 10
 Multifarious points on appeal have been raised by both parties. We will deal with each of these issues in turn.
 
 I. SECTION 1983 LIABILITY
 
 11
 Whether Mrs. Fowler's constitutional right to procedural due process under the Fourteenth Amendment was violated by the manner in which she left the City's employ is the critical liability issue raised by the City of Carrollton. The City seeks to distinguish the procedural due process ramifications of Fowler's causes of action for actual discharge and constructive discharge by the city.
 
 
 12
 The trial court did not distinguish between the two methods of discharge in its charge to the jury. The first jury interrogatory asked whether "Fowler was actually or constructively discharged from her position as Children's Librarian by the City and/or the library." The definition of "constructive discharge" immediately following this interrogatory stated that it is not necessary for the employee to show that the employer subjectively intended to force a resignation, but only that the employer "deliberately made the employee's working conditions so intolerable that the employee was forced to quit." The court further charged the jury that "because Fowler was never given any reasons for what she claims was a discharge, or a hearing thereon, her constitutional right to due process was violated." If the jury found that Fowler had been harassed out of her job, the court's instructions indicated that this was a per se constitutional violation, because she had received no hearing.
 
 
 13
 We agree with the City's contention that, from the standpoint of constitutional law analysis, it was error (a) to equate actual and constructive discharge and (b) to submit constructive discharge as a procedural due process claim on the facts on this case.[1] Significant court decisions, some of which have intervened since the date of trial, assist our analysis of the propriety of this disjunctive interrogatory and associated instructions. First, in Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), the Supreme Court held that "some type of hearing" is ordinarily a constitutional requirement for due process purposes before a public employee who has a property interest in his job may be terminated.[2] Under Loudermill, if Fowler was actively discharged by the City, as was the plaintiff in Loudermill, the City's failure to accord her a pretermination notice and hearing of some kind unquestionably violated her constitutional rights. Some evidence in the record tends to substantiate a theory that Fowler was actually discharged, and there was no pretermination hearing.
 
 
 14
 The Loudermill rule does not a fortiori apply to cases of alleged constructive discharge. A pretermination hearing is just not feasible when the gist of the employee's claim is that he was forced to resign by unbearable working conditions. More significantly, the lack of a pretermination hearing does not necessarily create a constitutional procedural due process violation when that deficiency was an unintended or fortuitous consequence of harassment at work. In Daniels v. Williams, --- U.S. ----, 106 S.Ct. 662, 666, 88 L.Ed.2d 662 (1986), the Supreme Court recently held that negligent conduct does not implicate the Due Process Clause of the Fourteenth Amendment (overruling, to that extent, Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)). There, the prison guard left a pillow on the stairway and the prisoner sued under Sec. 1983 to recover damages when he tripped on it. The Court cited with approval Justice Powell's concurrence in Parratt, urging that the word "deprive" in the Due Process Clause connotes more than a negligent act and that the doors of the federal courthouse should not be "open ... where there has been no affirmative abuse of power." Daniels, 106 S.Ct. at 664-65, citing Parratt, 101 S.Ct. at 1919-20. Discussing a public employee dismissal case, the Court cautioned, "In the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official action ... if erroneous, can best be corrected in other ways." Bishop v. Wood, 426 U.S. 341, 350, 96 S.Ct. 2074, 2080, 48 L.Ed.2d 684 (1976) (emphasis added).
 
 
 15
 No issue of intent arises in a Loudermill case, because the employee (with a property interest in his job) has been actually terminated without resort to constitutionally required procedures. The employer must have consciously ignored procedural due process. As defined by the district court, however, constructive discharge may often result as an unintended consequence from the course of interpersonal relations among employees and supervisors. Indeed, that was very likely the case here, for to the extent that Fowler demonstrated unbearable working conditions in the library, there was nevertheless no evidence that Mjaaland and Fowler's coworkers purposefully sought to force her to resign or purposefully planned to avoid the City's post-termination hearing procedure. Without proof of that critical nexus between the conduct complained of and the constitutional right being asserted, we find no general procedural due process protection against harassment at work.
 
 
 16
 Two points of elaboration upon this conclusion must be noted. First, constructive discharge as defined by the district court remains a cognizable cause of action under Title VII, 42 U.S.C. Sec. 2000e et seq.[3] The purpose of Title VII is to remedy discrimination by race, color, sex, national origin or religion. Harassment motivated by or consisting of these kinds of discrimination automatically establishes the required nexus between complained-of conduct and the employee's constitutional and statutory right to equal protection of the law. Compare Hamilton v. Rodgers, 791 F.2d 439 (5th Cir.1986).
 
 
 17
 Second, this case is readily distinguishable from Findeisen v. North East Ind. Sch. Dist., 749 F.2d 234 (5th Cir.1984), cert. denied, --- U.S. ----, 105 S.Ct. 2657, 86 L.Ed.2d 274 (1985), heavily relied upon by Fowler, even though Findeisen purports to deal with constructive discharge. Findeisen reversed a summary judgment rendered on behalf of the school district where a tenured teacher alleged that his resignation had been procured under threat that he would otherwise be fired and as a means for the school district to avoid the hearing procedure required for civil service employees. Similarly, in Bueno v. City of Donna, 714 F.2d 484 (5th Cir.1983), employees who were forced to resign in order to avoid involuntary discharge in retaliation for their political affiliation were held to have stated a cause of action under 42 U.S.C. Sec. 1983. Constructive discharge in these cases arose from the employee's finding himself between the Scylla of voluntary resignation and the Charybdis of forced termination. There was no question that cessation of their employment with a local governmental entity without following appropriate hearing procedures was the goal of actions toward the employee. Findeisen and Bueno, far from constitutionalizing any cause of action for constructive discharge, apply only in the narrow range of cases in which an employee confronts an either/or termination proposition, and it can be said that the state agency's motive is to avoid providing the pretermination remedy required by Loudermill. Findeisen and Bueno reinforce our conclusion that a valid procedural due process claim requires the employer's conduct to have been motivated by a desire to avoid subjecting its actions to the scrutiny of a termination-related hearing.
 
 
 18
 From the foregoing discussion, it appears that the district court erroneously submitted actual and constructive discharge as theories of Sec. 1983 recovery in the same jury interrogatory. Constructive discharge in a procedural due process case constitutes a Sec. 1983 claim only if it amounts to forced discharge to avoid affording pretermination hearing procedures. Constructive discharge, so limited, was not a viable cause of action in this case because there was no proof of the constitutionally proscribed purpose.
 
 
 19
 A verdict must be set aside "if the jury was instructed that it could rely on any of two or more independent grounds, and one of those grounds is insufficient, because the verdict may have rested exclusively on the insufficient ground." Zant v. Stephens, 462 U.S. 862, 881, 103 S.Ct. 2733, 2745, 77 L.Ed.2d 235 (1983), quoted in Neubauer v. City of McAllen, Texas, 766 F.2d 1567, 1576 (5th Cir.1985).
 
 II. DAMAGES
 
 20
 Although we would not usually review an issue pertaining to damages when the case will be re-tried, it is prudent to comment on several aspects of the trial court's damage determinations in the hope of averting future reversible error.
 
 
 21
 The City objected to that part of the judgment which awarded Fowler $50,000 for pain and suffering. Its attack is predicated on two grounds: that physical pain is not a compensable element of a Sec. 1983 cause of action for denial of procedural due process, and that there was no evidence of a causal connection between Fowler's alleged deprivation of her rights and her pain.
 
 
 22
 The first of these objections was not clearly pointed out to the trial court as an objection to the jury charge. Fed.R.Civ.P. 51 renders this objection waived unless the charge constituted "plain error." Middleton v. Harris Press & Shear, Inc., 796 F.2d 747 (5th Cir.1986). The charge properly focuses on the award of actual damages to compensate Fowler for the City's failure to give her reasons and a hearing prior to discharge.[4] Memphis Community Sch. Dist. v. Stachura, --- U.S. ----, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986); Carey v. Piphus, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). Despite this, the separate interrogatories permitting compensability of "mental anguish" and "pain and suffering" are difficult to comprehend. Both in fact and in law, the concepts overlap. The district court's definition of mental anguish encompasses "pain," as can be seen in footnote 4. The definition of mental anguish embodies "suffering" in several forms. Fowler's brief cites in support of the jury award for pain and suffering evidence that equally betokens mental distress. Fowler is described in the brief as distraught, shaking and weak, deathly afraid, crying easily, and in a "physical state of shock," depressed, lacking energy and "not in good health." She allegedly lost her energy and was not able to concentrate on things she had enjoyed doing in the past. It is not possible logically to distinguish which of these manifestations proves pain and which proves mental anguish.
 
 
 23
 Most tellingly, Carey v. Piphus abundantly demonstrates the error of bifurcating damages for mental anguish and physical pain and suffering. Carey, acknowledging that the "task of adaptation will be of some delicacy," 435 U.S. at 258, 98 S.Ct. at 1049, nevertheless concludes that damages in Sec. 1983 due process cases will, to the extent possible, mirror those in tort law generally, so long as plaintiffs are "put to their proof" that damages were actually caused by a procedural due process violation. 435 U.S. at 262, 98 S.Ct. at 1051. Available grounds for damages expressly include emotional distress. Id. Because Sec. 1983 damages are based on a principle of compensation, a characterization of plaintiff's loss which permits duplicate recovery for one type of harm is not allowed. Compare Memphis Community Sch. Dist. v. Stachura (it is error to allow the jury in this type of case to assess damages, in addition to compensatory damages, for violations of constitutional rights.) Second, Carey integrates all forms of psychic injury from a denial of procedural due process in the general term "distress."
 
 
 24
 ... we foresee no particular difficulty in producing evidence that mental and emotional distress actually was caused by the denial of procedural due process itself. Distress is a personal injury familiar to the law, customarily proved by showing the nature and circumstances of the wrong and its effect on the plaintiff.[20]
 
 
 25
 435 U.S. at 263-64, 98 S.Ct. at 1052. Two bites at the apple for this type of injury are thus proscribed by Carey. The jury interrogatories and instructions plainly erred in providing otherwise.
 
 
 26
 Although pain may be an element of Sec. 1983 emotional damages, if proved to have been caused by the procedural due process violation, Carey, 98 S.Ct. at 1050-52, the district court here abused its discretion in admitting medical records from Fowler's brief hospital stay with no accompanying expert explanation of their significance. The fact of hospitalization in establishing pain and suffering is equivocal, at best, because no expert witness appeared to support Fowler's subjective belief that her "transient global amnesia" was caused by stress at work. The court sustained an objection preventing Fowler from testifying as a layman to the causal connection. This court as well as the jury remains completely unenlightened by the record evidence as to the cause and nature of transient global amnesia. The records could lead only to unwarranted speculation by the jury and inferences in favor of Fowler, and their prejudicial impact manifestly outweighed the benefit of verifying such uncontested facts as the hospitalization. This court has held, in a Sec. 1983 case, that where a plaintiff attempted to prove that racially motivated harassment proximately caused a fatal heart condition, speculation will not suffice. Hamilton v. Rodgers, 791 F.2d at 444-45. So should it be on retrial.
 
 
 27
 In a similar hortatory vein, we reject Fowler's assertion that the jury should have been separately instructed concerning her loss of "professional reputation and career." This Court has previously linked the concepts of reputation and emotional distress as compensable psychic injury. Baskin v. Parker, 602 F.2d 1205, 1209 (5th Cir.1979). Reference to injured reputation may be included with the general charge for emotional distress if the evidence is sufficient to create a jury issue that Fowler's reputation was injured by the deprivation of procedural due process. Carey, supra.
 
 
 28
 The parties expended considerable appellate energy disputing the discretion afforded to the district judge in his denial of backpay, frontpay and reinstatement. As that discretion depends heavily upon the results encountered in a future trial, we shall not address it hypothetically here.
 
 III. AGE DISCRIMINATION
 
 29
 The district court, erroneously in Fowler's view, directed a verdict for the City on her claim that she was actually discharged in violation of the Age Discrimination in Employment Act, 29 U.S.C. Secs. 621 et seq. It held that Fowler had presented a prima facie case of discriminatory discharge, but that the City articulated legitimate nondiscriminatory reasons for its treatment of Fowler, in response to which Fowler had not introduced sufficient evidence to create a jury issue on the fact of discrimination.[5] Our review of the directed verdict is governed by Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir.1969) (en banc), which states:
 
 
 30
 On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence--not just that evidence which supports the non-mover's case--but in the light and with all reasonable inferences most favorable to the party opposed to the motion.... There must be a conflict in substantial evidence to create a jury question.
 
 
 31
 By this standard, we find the evidence barely sufficient to have required submission of her claim to the jury.
 
 
 32
 The City's articulated basis for its treatment of Fowler was that following an argument with Mjaaland on March 20, she left the office without his permission and never returned nor communicated with the City directly concerning her absence until May 12. Her daughter's conversation with Mjaaland was an interim communication, promising that Fowler would let him know about her intention to return later. Mjaaland testified that he knew Fowler was looking for work elsewhere. Mjaaland discussed Fowler's absence from work with the assistant city manager Eads, and they jointly decided to wait and see whether Fowler elected to return to regular employment. Apparently fortifying their decision was her removal of many personal objects from her office. Fowler never discussed with Mjaaland or Eads her receipt of her final paycheck after being absent from the library for two weeks.
 
 
 33
 Against this background of uncommunicative, unexplained, and rather strange behavior on Fowler's part, she posits that her termination nevertheless stemmed from age discrimination. While not denying that the City could have legitimately concluded that she was quitting her job or that being "absent without leave" for more than a full workweek would justify dismissal, she points to age-related epithets which Mjaaland and co-workers used behind her back for a lengthy period of time.
 
 
 34
 Because Mjaaland had authority to fire Fowler, evidence of his use of such epithets was probative of his motivation toward Fowler about the time of her termination. The conduct of coworkers without such authority over Fowler is not relevant to her ADEA charge, except to the extent it occurred in Mjaaland's presence or with his knowing acquiescence, as further corroboration of his intent. Without more than the evidence of such epithets or tolerance of others' epithets by Mjaaland, we would be reluctant to conclude that a jury issue exists. But the equivocal attitude of the City toward Fowler poses a conundrum which, as reflected by the evidence, questions the veracity of its "articulated nondiscriminatory reasons." The City never told Fowler that she had been discharged, yet Mjaaland so indicated to some library patrons and a newspaper article so informed others. Mjaaland checked the box marked "terminated" rather than the one marked "resigned" when he prepared Fowler's final employment record. Mjaaland began advertising for a new librarian at the state librarians' conference, where Fowler received her award, prior to her receipt of her last paycheck. The jury could have disbelieved Mjaaland's explanation that he did this because she had announced her intention to find work elsewhere. The seriously conflicting evidence could have raised a number of inferences concerning the City's motivation--that it truly believed Fowler had quit; that it discharged her for going AWOL; that job abandonment provided a better excuse for termination than washing the library's dirty linen in public (and damaging Fowler's reputation) by stating that she and her coworkers suffered from irreconcilable differences of opinion; or that she was too old for the job. Motivation presents a classic jury issue. The record before us required submission of the issue of age discrimination to the jury.
 
 
 35
 As can be seen by the foregoing evidentiary recital, Fowler's ADEA case does not depend solely on her subjective belief and thus differs from Elliott, supra, where it was properly held that a mere subjective belief in age discrimination does not raise a jury issue. Elliott also noted, 714 F.2d at 556, that
 
 
 36
 the trier of fact is not free to disregard [the employer's] explanation without countervailing evidence that it was not the real reason for the discharge. Such evidence may take the form of an attempted showing that the reason given by the employer, though facially adequate, was untrue as a matter of fact or was, although true, a mere cover or pretext.
 
 
 37
 Continuing from Elliott, "Even had the reasons articulated here been frivolous or capricious, had they been the genuine causes of these discharges they would have defeated liability under the ADEA. We reiterate: that statute proscribes only one reason for discharge--age." Id. at 567 (emphasis added). Award of a directed verdict was error.
 
 
 38
 Fowler also challenges the failure of the district court to submit an issue to the jury inquiring whether she was retaliated against, in violation of Sec. 623(d) of the ADEA, for filing an age discrimination claim on April 7. This step-child of the broader age discrimination action, unlike its parent, is supported by no evidence in the record that any city employee took retaliatory action against Fowler because she had filed an age discrimination complaint with the EEOC. Directed verdict was properly awarded on this aspect of her case.
 
 
 39
 The judgment of the district court is REVERSED and REMANDED for proceedings consistent herewith.
 
 
 
 [1]
 Because we find the jury charge erroneous on this basis, it is unnecessary to consider the City's alternate contention that its conduct toward Fowler was not taken pursuant to official custom and policy. See Pembaur v. City of Cincinnati, --- U.S. ----, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); Monell v. New York City Dept. of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)
 
 
 [2]
 The parties do not at this juncture dispute that, because Fowler, according to City policy, could not be terminated except for "just cause," she had a property interest cognizable under the due process clause. Loudermill, 105 at S.Ct. 1491-92, rejecting the plurality opinion in Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 1643-44, 40 L.Ed.2d 15 (1974)
 
 
 [3]
 Young v. Southwestern Savings & Loan Ass'n., 509 F.2d 140, 143-44 (5th Cir.1975). See also Bourque v. Powell Elec. Mfg. Co., 617 F.2d 61, 64-65 and n. 5 (5th Cir.1980), noting that several circuits have required that discriminatory harassment be motivated to force the employee to resign even under Title VII
 
 
 [4]
 QUESTION NO. 5
 What sum of money, if any, if paid now in cash, do you find would fairly and reasonably compensate Fowler for her mental anguish and physical pain proximately caused by the City's and/or the Library's deprivation of her due process rights?
 See Special instructions on page 15.
 No evidence of the value of such intangible things as mental or physical pain and suffering need be introduced. It is that amount which will fairly compensate Fowler for the damage she has suffered. There is no exact standard for fixing the compensation to be awarded on account of such elements of damage. Any such award should be fair and just in light of the evidence.
 The term "mental anguish" implies a relatively high degree of mental pain and distress. It is more than mere disappointment, anger, resentment, or embarrassment, although it may include all of these. It includes a mental sensation of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair and/or public humiliation.
 Answer each item of damages in dollars and cents. You must award at least a nominal amount such as $1.00 for each item of damages.
 
 
 [1]
 Mental anguish in the past to the
 date of trial. ($25,000.00)
 ------------
2. Mental anguish in the future. $1.00
 ------------
3. Physical pain in the past to the
 date of trial. ($50,000.00)
 ------------
4. Physical pain which in reasonable
 probability Fowler will suffer in
 the future. $1.00
 ------------
 
 
 [20]
 We use the term "distress" to include mental suffering or emotional anguish. Although essentially subjective, genuine injury in this respect may be evidenced by one's conduct and observed by others
 
 
 [5]
 The ping pong proof burdens in a discrimination case were established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). A prima facie case under the Age Discrimination in Employment Act, which was established here, consists in the employee's proving he is within the protected class, was qualified for the position he held, was discharged and was replaced by someone outside the protected class, by someone younger, or otherwise because of his age. See Elliott v. Group Medical & Surgical Serv., 714 F.2d 556, 565 (5th Cir.1983), cert. denied, 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984)