**Luella INGRAM, Plaintiff,**

v.

**DALLAS COUNTY, TEXAS, Defendant.**

Civ. A. No. 3–86–2308–H.

United States District Court,
N.D. Texas,
Dallas Division.

May 26, 1988.

---

Gabriel H. Robles, Dallas, Tex., for plaintiff.

Peter L. Harlan, Asst. Dist. Atty., Dallas, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

SANDERS, Acting Chief Judge.

Before the Court are Plaintiff's Motion and Brief for Partial Summary Judgment, filed October 23, 1987; Defendant's Response to Plaintiff's Motion for Partial Summary Judgment, and Defendant's Cross-Motion for Summary Judgment and Brief in Support, filed December 2, 1987; Plaintiff's Motion for Assessment of Costs and Attorneys Fees Against the County Under FRCP Rules 11, 26(g) & 56(g), filed December 21, 1987; Plaintiff's Brief in Opposition to the County's Cross–Motion for Summary Judgment and Brief in Reply to the County's Brief Opposing Plaintiff's Motion for Partial Summary Judgment and Brief in Support of Plaintiff's Motion for Assessment of Costs and Attorneys Fees, filed as one document on December 21, 1987; Defendant's Response to Plaintiff's Motion for Assessment of Costs and Attorneys Fees Under Rules 11, 26(g) & 56(g) of the Federal Rules of Civil Procedure, filed January 11, 1988; Defendant's Motion for Sanctions Against the Plaintiff and Her Counsel Under Rule 11 of the Federal Rules of Civil Procedure and Brief in Support, filed January 11, 1988; Plaintiff and Her Counsel's Brief in Opposition to Defendant's Motion for Sanctions Against Each, filed January 14, 1988; Plaintiff's February 3, 1988 letter further addressing contentions of Defendant, which was filed on February 10, 1988; Defendant's February 8, 1988 letter in response to Plaintiff's letter, which was filed on February 10, 1988; and, finally, Plaintiff's March 10, 1988 letter replying to Defendant's February 8 letter, which was filed on March 11, 1988.

This is a complex case involving, among others, claims of age discrimination and due process arising from Defendant Dallas County's dismissal of Plaintiff Ingram. For the reasons stated below the Court grants Plaintiff's Motion for Summary Judgment on her procedural due process claim; denies Plaintiff's Motion for Summary Judgment on her substantive due process claim; denies Plaintiff's Motion for Summary Judgment on her breach of employment contract claim and grants Defendant's Motion for Summary Judgment on that same claim; denies Defendant's Motion for Summary Judgment on Plaintiff's Age Discrimination in Employment Act ("ADEA") claim; dismisses Plaintiff's intentional infliction of emotional distress claim; and dismisses Plaintiff's claim that the County deprived her of her liberty interest in her good name and reputation. The Court also denies both parties' motions for sanctions for the reasons set forth in the last part of the opinion.

## I. Background and Contentions of the Parties

Many of the facts in this case are undisputed; therefore, in reciting the facts the Court will note only when the parties disagree. Plaintiff, Luella Ingram, is a 54 year old black female. Defendant is Dallas County, which was Ingram's employer at all times relevant to this lawsuit. Dallas County is a political entity under the laws of Texas. The County is divided into four districts and is governed by a five-member elected Commissioners' Court, comprised of one county judge and four commissioners, one from each district.

On November 1, 1965, Ingram was hired by the County through Jim Tyson, Commissioner of District No. 3, as a clerk for the

District No. 3 Road and Bridge Office. On July 16, 1966, Ingram was promoted to the position of bookkeeper for the same office by Commissioner Tyson.

On April 3, 1975, the County established a Civil Service Commission pursuant to Tex.Rev.Civ.Stat.Ann. art. 2372h–6, which is now codified as Tex.Loc.Gov't Code Ann. §§ 158.001–.015 (Vernon Pamphlet 1988). The Civil Service Commission ("Commission") is comprised of three members of the County Commissioners' Court; the Dallas County Director of Personnel serves as the Secretary to the Commission.[1] The Commission is responsible for making and enforcing personnel rules and regulations governing County employees. On October 4, 1976, the Commission promulgated the Dallas County Personnel/Civil Service Rules and Regulations ("Civil Service Rules"), which set forth the terms and conditions of employment for County employees. Prior to promulgation of those rules, all County employees were subject to termination at will. At all times material to this suit the Civil Service Rules were subject to change at any time by the direction of the Commission with the approval of the Dallas County Commissioners' Court.[2]

On or about January 13, 1981, Ingram was shown a job description titled "Bookkeeper/Office Manager," which she initialed. The parties dispute the purpose of this exercise and its effect. Ingram claims to have initialed the job description to verify the accuracy of the duties that she had performed since 1966. She claims that neither her duties nor her job title changed at this time. The County contends that Ingram's job description changed from bookkeeper to bookkeeper/office manager on or about January 13, 1981 and that

---

1. Dallas County Personnel/Civil Service Rules and Regulations § 1.04 (1985) (Exhibit 9 to Defendant's Cross–Motion for Summary Judgment); Tex.Loc.Gov't Code Ann. § 158.008. The County lists as an undisputed fact a statement that includes the Dallas County Director of Personnel as a member of the Civil Service Commission. Defendant's Cross–Motion for Summary Judgment at p. 5, Undisputed Fact No. 6. Ingram does not dispute the statement, but it is contrary to the plain language of both

the Dallas County rule and the Texas statute cited above.

2. This statement is actually a conclusion of law that is critical to the outcome of the case. The County's position on this issue has changed without explanation during the course of this lawsuit so that at times the issue was undisputed and at other times it was disputed. The Court decided the issue as stated above for the reasons set out on pages 13–20 of this Opinion.

Ingram initialed the job description to indicate her acceptance of the change and approval of the job description as being descriptive of her duties.

On January 1, 1985, John Wiley Price replaced Jim Tyson as District 3 Dallas County Commissioner. On April 29, 1985, Commissioner Price transferred Ingram from the Road and Bridge Office to his administrative office in downtown Dallas. Defendant County contends that Commissioner Price did so because Ingram was unable to adequately perform the essential duties of her position as bookkeeper/office manager of the District No. 3 Road and Bridge Office. Plaintiff Ingram contends that she performed her job in a satisfactory manner. Ingram's personnel file, which is attached to Defendant County's Cross–Motion for Summary Judgment as Exhibit Five, shows that she received no job deficiency performance notices at anytime while employed by the County until November 8, 1985, the date of her discharge. While she was employed in Commissioner Price's administrative office, Ingram performed general office or receptionist's work. Defendant County contends, and Ingram disputes, that her work in this area was also unsatisfactory.

On September 24, 1985, Ingram was directed by Commissioner Price to take accumulated leave time. On November 8, 1985, Commissioner Price discharged Plaintiff Ingram. The County contends that Commissioner Price discharged Ingram because of her demonstrated inability to perform her job duties. Plaintiff Ingram contends that she was fired to make room for a 26 year old black female friend of Commissioner Price.

On November 11, 1985, Ingram filed a charge of age discrimination against the County under the Age Discrimination in Employment Act ("ADEA"). The charge was filed jointly with the Equal Employment Opportunity Commission ("EEOC") and the Texas Commission on Human Rights. On December 2, 1985, Ingram was rehired by the County and assigned to duty in the Dallas County Tax Office as a telephone operator at a much lower rate of pay than she had earned in her previous position. On March 18, 1986, Ingram withdrew her age discrimination charge from EEOC. Ingram filed this lawsuit on September 9, 1986 and amended her complaint on June 10, 1987. Ingram's original complaint was filed against both the County and Commissioner Price. Her amended complaint did not list Price as a Defendant and her claim against Price was dismissed without prejudice in an agreed order filed June 29, 1987.

In her amended complaint Ingram alleges six causes of action. Her first and second causes of action allege respectively that the County violated her procedural and substantive due process rights by not affording her notice and a hearing prior to taking negative personnel action against her. Ingram's third cause of action alleges that through Commissioner Price's false statements concerning her job skills, the County deprived her of her liberty interest in her good name and reputation without due process of law. In her fourth cause of action Ingram claims that the County discriminated against her on the basis of age in violation of the ADEA when it fired her at the age of 52 and replaced her with a 26 year old woman. Ingram's fifth cause of action alleges that the County breached its implied employment contract with her when it reclassified her position. Finally, in her sixth cause of action Ingram claims that Commissioner Price intentionally humiliated her and that his actions constitute tortious intentional infliction of emotion distress on the part of Defendant County.

In her Motion for Summary Judgment, Ingram seeks summary judgment on her first, second, and fifth causes of action: that the County violated her procedural and substantive due process rights and that the County breached its implied employment contract with her. In her response to the County's Cross–Motion for Summary Judgment, Ingram stipulates to the dismissal without prejudice of her sixth cause of action, her claim for intentional infliction of emotional distress against the County.

In its Cross–Motion for Summary Judgment, the County claims that all of In-

gram's claims against it are completely without merit in either fact or law. Accordingly, the County seeks the summary dismissal of Ingram's entire suit.

## II. Due Process Claims

Ingram claims that under the Dallas County civil service system she had a property interest in her employment with the County because under the Civil Service Rules she could only be fired for just cause. She claims that the County violated her procedural and substantive due process rights by depriving her of that property interest without due process of law when it discharged her with neither notice nor a pre-termination hearing. The County denies that Ingram had a property interest in her employment. Furthermore, the County claims that even if Ingram did have such a property interest, her procedural due process claim is barred as a matter of law by the *Paratt/Hudson* doctrine and her substantive due process claim is barred because it is nothing more than a procedural due process claim disguised so as to avoid the *Paratt/Hudson* doctrine.

### A. Procedural Due Process

■ A former public employee who seeks to make out a procedural due process claim in the context of a wrongful discharge complaint must allege with particularity:

(i) the state or federal law or understanding giving rise to the property interest;

(ii) the particular process that Plaintiff was entitled to and failed to receive; and

(iii) that the official's failure to provide these particular processes violated "clearly established constitutional law" at the time of the alleged infraction.

*Brown v. Texas A & M University,* 804 F.2d 327, 333 (5th Cir.1986) (citation omitted). In this case, Ingram has alleged the specific state law and county civil service rules that give rise to her claim of a property interest in her continued employment. She has also specifically alleged that she

was entitled to notice and a hearing prior to being discharged and thereby deprived of her property right. Finally, she has alleged that the County's failure to give her notice and a pre-termination hearing violated constitutional law as it was clearly established at the time of her wrongful discharge. The Court, therefore, holds that Ingram has adequately alleged a procedural due process claim under the Fourteenth Amendment.

In deciding whether she has proved her claim as a matter of law, the Court turns first to the issue of whether Ingram had a property interest in her employment with the County under the County's civil service system. An understanding of the civil service scheme applicable to Dallas County employees derives partly from the County's Civil Service Rules and partly from Texas law, specifically Tex.Loc.Gov't Code Ann. §§ 158.001–.015 (Vernon Pamphlet 1988) (formerly Tex.Rev.Civ.Stat.Ann. art. 2372h–6).

Texas law defines the term "employee" for purposes of designating which county workers are covered by a county's civil service system:

"Employee" means a person who obtains a position by appointment and who is not authorized by statute to perform governmental functions involving an exercise of discretion in the person's own right.... The term does not include a person who holds an office the term of which is limited by the constitution of this state.

Tex.Loc.Gov't Code Ann. § 158.001(2). *See also* Tex.Loc.Gov't Code Ann. § 158.010(c) (persons within definition of employee are covered by county civil service system); § 158.013 (lists some employees excluded from coverage). Texas law also authorizes a duly constituted county civil service commission to adopt and enforce rules regarding, among other things, "selection and classification of county employees," and "matters relating to ... the procedural and substantive rights" of county employees. Tex.Loc.Gov't Code Ann. § 158.009(a)(1), (7).

Pursuant to Texas law and as part of the Dallas County Personnel/Civil Service

Rules and Regulations, the Dallas County Civil Service Commission has designated three categories of permanent full-time county employees and defined the civil service rights that attach to each category. Category "A" employees are excluded from virtually all civil service protection; Category "B" employees are given very limited civil service protection; and Category "C" employees are given full civil service protection. Dallas County Personnel/Civil Service Rules and Regulations § 2.00 (1985). The civil service protection afforded Category "C" employees includes protection from dismissal (except for lay-offs) for reasons other than just cause. *See id.* §§ 2.00, 2.55-.60, 7.01-.02. The categories are defined as follows:

1). CATEGORY "A"—The executive secretary, administrative assistant(s) and Chief Deputy or First Assistant of the County Judge, County Commissioners and Elected Officials as approved by the Commissioner's Court.

2). CATEGORY "B"—All Department Heads and Assistant Department Heads as approved by Commissioner's Court (i.e., those employees who establish, implement, and interpret department policy). Assistant Department Heads who have five years' or more continuous County service and are terminated for reason other than just cause shall be given the opportunity to accept a demotion to their last lower grade and position before they were promoted.

3). CATEGORY "C"—All other Permanent, Full-Time employees as defined in [Tex.Loc.Gov't Code Ann. § 158.001(2)]....

*Id.* at § 2.00.

The parties to this lawsuit do not dispute that Ingram was a full-time permanent employee who under Texas law was covered by Dallas County's civil service system. The parties vehemently disagree, however, as to which category of employee Ingram was under the County's Civil Service Rules. Ingram contends that from the time the

Dallas County Civil Service Commission was first formed and the Civil Service Rules were first promulgated until the time of her discharge, she was a Category "C" employee and, therefore, was fully protected by all of the County's Civil Service Rules.

Defendant County contends that Ingram was a Category "A" employee at the time of her discharge. The County bases its contentions on the following. It claims, first, that because she initialed the "bookkeeper/office manager" job description on January 13, 1981, she was indisputably the District No. 3 Road and Bridge Office's office manager. Next, the County claims that the office manager job was a Category "A" position. It claims that on December 20, 1982, the County Civil Service Rules were amended so as to designate all County job titles as either Category "A," "B," or "C" and that the office manager position was designated a Category "A" position.

The first question to be answered is whether Ingram was the District No. 3 Road and Bridge Office's office manager. The Court finds this question to be one of fact, which it may not properly answer. Both Ingram and her former boss Jim Tyson swear in their affidavits that she was not promoted to bookkeeper/office manager on January 13, 1981. They also aver that Ingram's job responsibilities continued substantially unchanged from the time she was promoted to bookkeeper on July 1, 1966 until the time Tyson left office on December 31, 1984. They swear that Ingram never supervised anyone and never functioned as anything other than a bookkeeper. That evidence tends to undermine the County's contention that Ingram was the office manager of the District No. 3 Road and Bridge Office. On the other hand, on the EEOC form that Ingram completed when she filed her age discrimination charge, Ingram stated that she "was promoted to Office Manager and Bookeeper on July 16, 1966, position [she] held until [she] was discharged." *See* Exhibit 10 to Defendant's Cross-Motion for Summary Judgment. This evidence tends to support the County's contention as does the fact

that Ingram did initial a job description that included "office manager" in the job title. This conflicting evidence precludes a holding as a matter of law that Ingram either was or was not an office manager. Because of the way the Court resolves the next question, however, whether Ingram was or was not an office manager is irrelevant.

The next question to be answered is whether the classification of the job title "office manager" as a Category "A" position ever became a part of the civil service scheme of Dallas County. In support of its contention that the office manager position has been designated as a Category "A" position under the County's civil service system, the County offers the minutes of the December 13, 1982 and the December 20, 1982 meetings of the Civil Service Commission. The minutes of the December 13 meeting show discussion of a proposal to categorize as "A," "B," or "C" all County job titles and send a printout to every County department listing that department's personnel and their civil service category. The purpose of the proposal was to inform newly elected officials which of their department's personnel would be removable (i.e., not protected by the civil service system) with the change of administration.

The proposal was made to the Commission by Mr. Allen Clemson, the County's Director of Personnel/Civil Service who served as secretary to the Commission. Mr. Clemson and his staff had already categorized the job titles. At the December 13 meeting Clemson asked the Commission to approve the categorization recommendations and also to approve sending printouts to each department. Clemson explained the proposal to the Commission, and in the course of explaining how the categorization decision had been made, he stated: "The only position that may be up for discussion ... is the office manager. This position in some offices may not function as an A, while in the majority of Districts, we do think that they function at an A capacity, so went ahead and listed them as an A." Transcript of December 13, 1982 Civil Service Commission meeting at 7 (Exhibit 7 to

Defendant's Cross–Motion for Summary Judgment). One of the Commissioners asked Clemson if the categorizations were a departure from past decisions. Clemson explained that in the past there had never been an attempt to take each position and categorize it. Id. at 8. One of the Commissioners stated that as he understood it, "[a]ll we're doing is putting in black and white what has been policy before." Id. at 10. At the end of the discussion, the Commissioners agreed to put the proposal on the agenda for action on December 20, 1982. Id. at 13.

The minutes of the Commission's meeting on December 20, 1982 show that second on the agenda was the following item: "Establish Civil Service Rules and Regulations job categories for all Dallas County employees." The minutes reflect no further discussion of the proposal. Action on the proposal was taken when Chairman Orr asked:

Do we have a motion to allow the personnel director to send out civil service rules and regulations in various categories for all Dallas County employees?

Transcript of December 20, 1982 Civil Service Commission meeting at 54 (Exhibit 7 to Defendant's Cross–Motion for Summary Judgment). The motion was made, seconded and passed, and the meeting was adjourned. Id. at 54–55.

The minutes of these meetings demonstrate that the Commission apparently intended to amend the Civil Service Rules to designate by job title every job in Dallas County as Category "A," "B," or "C." The minutes of the December 13, 1982 meeting also clearly show that, at least as far as some district offices were concerned, the designation of the office manager position as Category "A" would have been a departure from past policy and perhaps a departure from the reality of the job's function. The question left unanswered by these minutes is a question of law: Did the action taken by the Dallas County Civil Service Commission on December 20, 1982 effectively amend the County's Civil Service Rules.

■ The Court holds that it did not because pursuant to the Dallas County Civil Service Rules, the Rules can be amended only after action by the Civil Service Commission *and* approval of the Dallas County Commissioners' Court. The County disagrees with the Court's holding that the December 20 action of the Commission on the categorization proposal was ineffective, but the County's arguments in support of the effectiveness of the Commission's action have been far from consistent.

At first, the County appeared to admit that "the Dallas County Personnel/Civil Service Rules and Regulations were subject to change at anytime by the direction of the Civil Service Commission *with the approval of* the Commissioners' Court." Defendant's Cross–Motion for Summary Judgment at page 6 Undisputed Fact 10 (emphasis added by the Court); *see also* Affidavit of Allen Clemson at pages 3–4 (Exhibit 2 to Defendant's Cross–Motion for Summary Judgment). At that time the County offered in support of its argument that the Commission's December 20 action was nevertheless effective to amend the County's civil service scheme the following logic. All the County commissioners who constituted the Civil Service Commission on December 20, 1982 approved the categorization proposal. Those three commissioners constituted a quorum of the Commissioners' Court, and, therefore, the Commission's action was tantamount to a decision of the Commissioners' Court. Supplemental Affidavit of Allen Clemson dated January 8, 1988 at pages 3–4 (Exhibit 2 to Defendant's Response to Plaintiff's Motion for Sanctions, filed January 11, 1988).

Subsequently, the County changed its position. In its letter to the Court dated February 8, 1988 the County argues that "there is no requirement under the county personnel rules or state law that the acts of the Civil Service Commission, with respect to the categorization and classification of county employees, be formally approved by an order of the Commissioners' Court." For the following reasons, the Court disagrees with both of the County's arguments.

First, the Court will explain its holding that the December 20 action of the Commission was ineffective to amend the Civil Service Rules because an amendment of the Rules requires both action by the Commission and approval of the Commissioners' Court. Texas law empowers and instructs a county's civil service commission to promulgate and enforce rules regarding a broad array of personnel matters. *See* Tex.Loc.Gov't Code § 158.009. Essentially, Tex.Loc.Gov't Code § 158.009 orders a county's civil service commission to establish a set of civil service rules. The Dallas County Civil Service Commission did this when it promulgated the Dallas County Personnel/Civil Service Rules and Regulations on October 4, 1976. The Statement of Intent, which precedes Chapter One of the Rules, states that "[t]hese rules, regulations, policies, procedures and benefits are subject to change at any time, by direction of the Civil Service Commission *and* the approval of Commissioners' Court...." Dallas County Personnel/Civil Service Rules and Regulations at page 1 (1985) (Exhibit 9 to Defendant's Cross–Motion for Summary Judgment) (emphasis added by the Court). Thus, in order to change the rules that govern Dallas County's civil service system, both the Dallas County Civil Service Commission and the Dallas County Commissioners' Court must act.

The County does not address the Statement of Intent. Instead, the County points to § 1.03 of the Rules. Section 1.03, which follows the subheading "Commissioners' Court," states:

The Commissioners' Court is authorized under Vernon's Annotated Civil Statutes (V.A.C.S.) Article 2372h–6 to establish a three-member Civil Service Commission, with one member designated to act as chairman, which shall make, publish and enforce rules relating to 1) selection and classification of county employees, 2) competitive examination, 3) promotions, seniority and tenure, 4) layoffs and dismissals, 5) disciplinary actions, 6) grievance procedures and other procedural and substantive rights of employees, and 7) other matters having to do with selec-

tion of employees and their advancement, rights, benefits and working conditions. Section 1.03 merely recites the power of the Commissioners' Court under Texas law to establish a civil service commission and then restates the provisions of Tex.Loc. Gov't Code Ann § 158.009 (formerly Art. 2372h–6) as to the purpose and powers of the commission.

The Court holds that § 1.03 and the Rules' Statement of Intent are not in conflict. It is a primary tenet of construction that different parts of a statute, rule or contract must be read so as to give effect to each part. *See e.g., Duke v. University of Texas at El Paso,* 663 F.2d 522, 526 (5th Cir.1981), *cert. denied,* 469 U.S. 982, 105 S.Ct. 386, 83 L.Ed.2d 320 (1984); *McCuin v. Secretary of Health and Human Services,* 817 F.2d 161, 168 (1st Cir.1987). Applying that principle, the only construction of the Rules that makes sense is the following: While Texas law and § 1.03 of the County's Civil Service Rules authorize the Dallas County Civil Service Commission to establish a set of personnel/civil service rules, the Commission, through its Statement of Intent, which is a part of the County's Civil Service Rules, simply limited its authority to amend the Rules. This the Commission clearly had the power to do. Any other construction of the Civil Service Rules would render meaningless the Statement of Intent, which the Court declines to do.

Similarly, the Court disagrees with the County's earlier argument, that the December 20 action of the Civil Service Commission was tantamount to approval of the Commissioners' Court. Section 1.04 of the Dallas County Civil Service Rules states that "[t]he three-member [Civil Service] Commission shall be comprised of members of the Dallas County Commissioners' Court." Thus, a unanimous decision of the Commission would always be rendered by a majority of the Commissioners' Court. Nevertheless, as noted above, when it promulgated the Rules the Commission clearly required that the Rules could be changed only with a decision by the Commission *and* the approval of the Commissioners' Court.

To accept the argument of the County, therefore, would be to render meaningless in many instances the requirement of Commissioners' Court approval. If all the Commission had wanted to accomplish by its Statement of Intent was to ensure approval by a majority of the Commissioners' Court, it could simply have required that all Commission actions be unanimous and dispensed with the requirement of approval by the Commissioners' Court. Alternatively, it could have required Commissioners' Court approval only of non-unanimous Civil Service Commission decisions. Instead, the Statement of Intent provides that the Civil Service Rules may be changed only "by direction of the Civil Service Commission and the approval of the Commissioners' Court."

There are many reasons why the Civil Service Commission might have instituted this requirement. The Commission may have thought that such a requirement would allow for more input by citizens who might either notice the item on the Commissioners' Court agenda or who attend Commissioners' Court meetings regularly. Alternatively, the Commission may have thought it beneficial to allow the other members of the Commissioners' Court to inform the discussion of civil service matters thereby perhaps even changing the ultimate decision on such matters. But whatever the Commission's reasons may have been, the Statement of Intent is clear. The Court holds that the Dallas County Civil Service Rules require that in order to effectively change the rules of Dallas County's civil service scheme, the actions of the Dallas County Civil Service Commission must be approved by the Dallas County Commissioners' Court convened as such.

Despite ample opportunity to do so, the County has offered no evidence that the action of the Civil Service Commission on the categorization proposal was ever approved by the Commissioners' Court. Nor does the County offer any evidence that the December 20 meeting of the Civil Service Commission was also convened as a special term of the Commissioners' Court

as provided for by Tex.Loc.Gov't Code Ann. § 81.005. The Court also notes that despite the County's claim that as a result of the December 20, 1982 action of the Civil Service Commission the civil service scheme of Dallas County now designates by job title every job in Dallas County as Category "A," "B," or "C," absolutely no reference to this County-wide designation appears anywhere in the Civil Service Rules that have been provided to the Court. *See* Exhibit 9 to Defendant's Cross–Motion for Summary Judgment. The Court, therefore, concludes that the action of the Dallas County Civil Service Commission at its December 20, 1982 meeting was not effective to amend the County's Civil Service Rules so as to designate the office manager position as a Category "A" position.

At one point in its brief the County appears to argue that even if the Civil Service Commission's action of December 20, 1982 was ineffective, the office manager position is nevertheless unprotected by the Civil Service Rules. To support this argument the County alleges that prior to December 20, 1982 the office manager position was "classified as a Class I position under the former county personnel rules which [was] similarly unprotected by the civil service rules." Defendant's Cross–Motion for Summary Judgment at page 17. The only evidence offered in support of this allegation is a conclusory statement made by Allen Clemson in his affidavit, which essentially merely repeats the allegation. Affidavit of Allen Clemson at page 5 (Exhibit 2 to Defendant's Cross–Motion for Summary Judgment). The County does not further explain its argument or provide any supporting documentation. Thus, the County has established no genuine issue of fact with regard to the prior unprotected status of the office manager position and the Court holds that the County's argument on this point is totally without merit.

Having concluded that Ingram was not a Category "A" employee simply because she may have held the title "office manager," the Court considers the issue of what category employee Ingram was at the time of her discharge. In order to prevail on her claim to have had a property right in her job and, therefore, have been entitled to notice and a pretermination hearing, Ingram must prove that she was Category "C" employee. As discussed above, Category "C" employees are defined by exclusion; they are all employees who do not fit within the definition of Category "A" or Category "B" employees.

The evidence offered by Ingram on this point is uncontroverted. Ingram and her former boss, Jim Tyson, swear in their affidavits that Ingram was never an executive secretary or an administrative assistant. Additionally, Tyson avers that Ingram was not on his personal staff, did not represent him in the eyes of the public, and, "[f]rom the standpoint of working intimacy and confidentiality, ... [was not] within the category of [his] advisors...." Supplemental Affidavit of James W. Tyson at page 2 (Exhibit B to Ingram's Brief in Opposition to the County's Cross–Motion for Summary Judgment).

The only evidence offered by the County to refute the statements of Ingram and Tyson with regard to Ingram's job responsibilities is the affidavit of Allen Clemson. On page five of his affidavit, Clemson discusses the office manager position in general terms. He makes no claim that the description he offers applied to Ingram. In fact, Clemson's statements at the December 13 meeting of the Civil Service Commission to the effect that not all of the County's Road and Bridge Office's office managers functioned as Category "A" employees undermine his subsequent generalization of the responsibilities attendant to the office manager position. Accordingly, the Court finds Clemson's testimony irrelevant on the issue of what category employee Ingram was at the time of her discharge.

■ Based on the uncontroverted testimony of Ingram and Tyson, the Court holds that Ingram's job at the time of her discharge did not fall within either the Category "A" or Category "B" definitions. Therefore, the Court holds that Ingram was a Category "C" employee at the time of her discharge and, consequently, had a property interest in her job. Because the

fact that Ingram received neither notice nor any sort of pre-termination hearing is not disputed, the Court holds that as a matter of law the County deprived Ingram of property without due process of law when it fired her on November 8, 1985.[3] *See e.g., Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542–44, 105 S.Ct. 1487, 1493–94, 84 L.Ed.2d 494 (1985); *Fowler v. Carrollton Pub. Library*, 799 F.2d 976, 979–80 (5th Cir.1986) (both cases holding that termination of property interest in continued employment must be preceded by notice and some form of hearing).

Thus, following the rules for recovery set out in *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), Ingram is at least entitled to recover nominal damages from the County as a result of the County's denial of a pre-termination hearing at which the allegations of just cause would have been either proved or debunked. *See id.* at 266–67, 98 S.Ct. at 1053–54. Furthermore, if she can prove that this denial in and of itself caused her mental and emotional distress, she is entitled to compensation for that distress. *Id.* at 260–64, 98 S.Ct. at 1050–52. Finally, if she further proves that her dismissal was not justified, she is entitled to compensation for any injury she can show to have been caused by the unjustified dismissal. *Id.* at 253–59, 98 S.Ct. at 1046–50; *see also, Fowler v. Carrollton Pub. Library*, 799 F.2d 976, 981–83 (5th Cir.1986) (discussing *Carey v. Piphus* with approval).

## B. The Paratt–Hudson Doctrine

■ Defendant County argues that Ingram's procedural due process claim is barred by the *Paratt/Hudson* doctrine. The Court disagrees.

The *Paratt/Hudson* doctrine applies to cases in which a procedural due process claim is alleged as a result of a single instance of random and unauthorized deprivation of property. The doctrine arises from two Supreme Court cases which hold

that in such instances if state law provides a post-deprivation damage remedy, then the deprivation does not violate procedural due process. A pre-deprivation hearing is not necessary; and state tort law provides all the process that is due. *See Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (negligent deprivation of prisoner's hobby kit by prison officials without pre-deprivation hearing not procedural due process violation) (modified by *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), which held that unintentional deprivation by merely *negligent* act of official does not state cause of action under due process clause); *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (extension of *Parratt* rule to intentional random deprivations); *Schaper v. City of Huntsville*, 813 F.2d 709, 714–16 (5th Cir.1987) (applying doctrine); *Holloway v. Walker*, 784 F.2d 1287, 1291–93 (5th Cir.1986) (explaining and applying doctrine).

The County argues that Ingram had an adequate state law post-deprivation remedy because final decisions of a county's civil service commission are appealable in state district court. *See* Tex.Loc.Gov't Code Ann. § 158.012. Therefore, the County argues, under the *Paratt/Hudson* doctrine Ingram's procedural due process claim is barred, and she is relegated to her state law remedy. The County's argument fails for two reasons. In the first place, it is not clear that Tex.Loc.Gov't Code Ann. § 158.012 applies to Ingram's situation. It is not disputed that the County denied Ingram access to the civil service grievance system. It is that system which results in the final civil service commission decision referred to in § 158.012. Since Ingram was not able to pursue a civil service grievance, she had no final commission decision to appeal in state court.

Furthermore, contrary to the County's assertions, the Fifth Circuit has held that

---

**3.** Because the Court holds that the County unconstitutionally deprived Ingram of her property right in continued employment when it fired her, the Court does not reach Ingram's claims that her due process rights were violated either

when the County recategorized her as a Category "A" employee without notice or when the County through Commissioner Price de facto demoted her to a receptionist position prior to her termination.

the *Paratt/Hudson* doctrine does not apply in the context of a wrongful discharge of a public employee. *Findeisen v. North East Indep. School Dis.*, 749 F.2d 234, 239 (5th Cir.1984), *cert. denied*, 471 U.S. 1125, 105 S.Ct. 2657, 86 L.Ed.2d 274 (1985) ("In the context of the discharge of a tenured public school teacher, we perceive no *Paratt*-directed change in the [law of due process].").  The Supreme Court also indirectly addressed the issue when in *Loudermill* it allowed Loudermill to maintain his procedural due process claim despite the fact that the Cleveland Civil Service Commission's decision against him was subject to review in the state court. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 536, 105 S.Ct. 1487, 1490, 84 L.Ed.2d 494 (1985). The Court, therefore, holds that the *Paratt/Hudson* doctrine does not apply in this case to bar Ingram's procedural due process claim.  Plaintiff Ingram's Motion for Summary Judgment on her procedural due process claim is GRANTED.

### C.  Substantive Due Process

Although other Circuits have held otherwise, the Fifth Circuit has held that a complaint alleging arbitrary and capricious deprivation of a state-conferred property interest does state a cause of action under the Due Process Clause of the Fourteenth Amendment. *Schaper v. City of Huntsville*, 813 F.2d 709, 717 (5th Cir.1987).  At the same time, however, the Fifth Circuit has held that if such a deprivation is really the same claim alleged as a procedural due process violation, and the procedural due process claim is barred under the *Paratt/Hudson* doctrine, then the substantive due process claim is barred as well. *Id.* at 718; *Holloway v. Walker*, 784 F.2d 1287, 1293–94 (5th Cir.1986). What the Fifth Circuit has not clarified is whether the substantive due process claim is allowed if it is really the same claim alleged as a procedural due process claim, but the procedural

due process claim was allowed because it did not fall within the *Paratt/Hudson* doctrine.

If the procedural claim is made, as it is here, and is not barred, as it was not barred here, then the essentially identical substantive due process claim, such as is made here, should be irrelevant.  Therefore, because the Court has found as a matter of law that the Defendant County violated Ingram's procedural due process rights, it declines to reach Ingram's substantive due process claim.

### III.  Age Discrimination Claim

### A.  Exhaustion of Administrative Remedies

Defendant County argues that Ingram's claim of age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634, is barred as a result of her failure to exhaust available administrative remedies.  Specifically, the County argues that Ingram's withdrawal of her charge of age discrimination from the EEOC constitutes failure to exhaust her administrative remedies and bars this suit.  For the following reasons the Court disagrees.

The only sections of the ADEA that could reasonably be read as imposing a requirement that a privately employed plaintiff exhaust her administrative remedies prior to filing a civil action are 29 U.S.C. §§ 626(d) and 633(b). Section 626(d) requires that an aggrieved person wait 60 days after filing a discrimination charge with the EEOC before filing a civil lawsuit. Section 633(b) requires that an individual also wait 60 days after filing with a state agency, if an appropriate state agency exists, before filing suit.[4]

It is undisputed that Ingram filed her charge of age discrimination with the EEOC on November 14, 1985.  The EEOC forwarded the complaint to the Texas Commission on Human Rights (TCHR) that

---

4. The Texas Commission on Human Rights as established under Tex.Rev.Civ.Stat.Ann. art. 5221k is an authorized stage agency under 29 U.S.C. § 633(b).

Defendant County alleges that as another exhaustion requirement or prerequisite to suit,

Ingram must also file a notice of intent to sue under 29 U.S.C. § 633a(d).  Section 633a provides special procedures for age discrimination claims brought by employees of the federal government.  Thus, § 633a does not apply to Ingram in this suit.

same day, and on December 10, 1985, TCHR indicated that it would not process the charge.[5] On March 18, 1986, Ingram withdrew her charge from EEOC.[6] Ingram filed this lawsuit on September 9, 1986.

■ The parties do not dispute that at the time Ingram withdrew her charge from EEOC it had been pending with that agency for over 120 days. Thus, the required 60 day waiting period had expired, and Ingram could have filed this federal court action prior to withdrawing her claim from EEOC. Ingram waited almost another six months, however, before filing this suit, which was still filed well within the ADEA's two-year statute of limitations. 29 U.S.C. § 626(e). The precise issue to be resolved is one of first impression: Whether Ingram's withdrawal of her EEOC charge after it had been pending for more than 60 days but before she had filed a civil action bars her subsequently filed civil action. The Court holds that it does not.

Several circuit courts have discussed the purpose of § 626's requirement that a grievant timely file a charge with EEOC and wait 60 days before filing suit. Those courts have identified two primary purposes of the requirement. First, because EEOC must in turn notify those persons whose actions are complained of, the requirement provides early notice of a potential lawsuit to an employer. *Dartt v. Shell Oil Co.*, 539 F.2d 1256, 1261 (10th Cir.1976), *aff'd per curiam in memorandum decision by an equally divided court*, 434 U.S. 99, 98 S.Ct. 600, 54 L.Ed.2d 270 (1977);

*Powell v. Southwestern Bell Telephone Co.*, 494 F.2d 485, 488 (5th Cir.1974). Second, the courts have held that the EEOC filing requirement exists to allow EEOC to attempt informal conciliation in a timely manner. *Id.* The language of § 626 itself emphasizes the central importance both of EEOC's timely notification of those named in a charge and of the agency's attempts at conciliation.[7]

In § 626(d), Congress set up a time frame within which EEOC is to work to carry out the purposes of the EEOC filing requirement discussed above. Section 626(d) limits EEOC's time in which to attempt conciliation unhampered by pending litigation by authorizing a complainant to file a civil lawsuit once the charge has been filed for 60 days. Congress apparently believed that conciliation efforts would either bear fruit in 60 days or be fruitless.

Apart from the 60 day state and federal waiting periods, the ADEA imposes no prerequisites to suit. Unlike the comparable section of Title VII, § 626 of the ADEA does not require a complainant to obtain a right to sue letter from EEOC. The ADEA complainant's right to initiate a private lawsuit and remove the cause to a judicial rather than administrative forum is unfettered after 60 days.

It is true that Congress did not remove EEOC's ability to act on a filed charge either at the end of the 60 day waiting period or upon the complainant's filing suit. In fact, § 626(c) provides that the right of a complainant to file a civil action terminates

---

5. Ingram's administrative filings were timely under the ADEA and the County does not dispute that fact. *See* 29 U.S.C. § 626(d).

6. The parties dispute whether the withdrawal was voluntary. Ingram argues that it was involuntary because it was based on promises made to her by Commissioner Price with regard to reinstatement of benefits and placement in a different job. The County contends that the withdrawal was voluntary but does not specifically deny that Commissioner Price made such representations to Plaintiff. Because the Court holds that Ingram's withdrawal of the charge is irrelevant to the propriety of this suit, it does not reach the voluntariness issue.

7. 29 U.S.C. § 626(b) states:

Before instituting any action under this section, the Equal Employment Opportunity Commission shall attempt to eliminate the discriminatory practice or practices alleged, and to effect voluntary compliance with the requirements of this chapter through informal methods of conciliation, conference, and persuasion.

29 U.S.C. § 626(d) states:

Upon receiving such a charge, the Commission shall promptly notify all persons named in such charge as prospective defendants in the action and shall promptly seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion.

upon the commencement of an EEOC action to enforce the rights of the complainant. However, the great weight of authority holds that once a complainant has filed suit, a subsequent action filed by the EEOC does not preempt the private suit. *See Castle v. Sangamo Weston, Inc.*, 744 F.2d 1464, (11th Cir.1984); *EEOC v. Eastern Airlines*, 736 F.2d 635, 640 (11th Cir. 1984); *Burns v. Equitable Life Assurance Soc'y*, 696 F.2d 21, 23 (2d Cir.1982), *cert. denied*, 464 U.S. 933, 104 S.Ct. 336, 78 L.Ed.2d 306 (1983); *see also Chapman v. City of Detroit*, 808 F.2d 459, 463 (6th Cir.1986) (citing and agreeing with *Burns* and *EEOC v. Eastern*, but noting that decision on that issue not necessary to resolve dispute before the court).

Thus, once EEOC has failed after 60 days to achieve conciliation or take other action, maintenance of the charge with the agency serves little purpose. The only conceivable purpose would be to allow EEOC to bring an action under its auspices as a supplement to the private suit. The benefits of such an action are not wholly illusory but are completely overwhelmed by the harshness of a rule such as that urged by Defendant County, which would prohibit private suit by a complainant who has met every statutory prerequisite to suit but chose for whatever reason to withdraw her EEOC charge prior to filing her civil action. As at least one other court has stated, the procedural requirements of the ADEA should be interpreted so as to frustrate a potentially meritorious claim only when necessary to advance a substantive goal of the Act. *Franci v. Avco Corp.*, 460 F.Supp. 389, 394 (D.Conn.1978). Such is not the case here.

Defendant County cites the Court to a line of cases holding that if an ADEA claimant abandons administrative remedies she has initiated, she is barred from filing a civil suit because she has failed to exhaust her administrative remedies. *See, e.g., Putrill v. Harris*, 658 F.2d 134, 138 (3rd Cir.1981), *cert. denied*, 462 U.S. 1131, 103 S.Ct. 3110, 77 L.Ed.2d 1365 (1983); *Jordan v. United States*, 522 F.2d 1128 (8th Cir. 1975). The County makes much of these cases, but they are totally inapposite to the case at bar. The line of cases relied upon by the County interprets § 633a of the ADEA. Section 633a addresses only actions brought against the federal government as an employer. The procedures to be followed in filing a civil suit under § 633a are considerably different from those applicable to claimants who do not work for the federal government. After an exhaustive search, the Court could find no opinion of any court applying the *Putrill* holding or logic to a case brought by a privately employed claimant. Cases construing the procedures set forth in § 633a are simply not relevant here.

In summary, the Court finds that the purposes of § 626's EEOC filing requirement, timely notice to potential defendants and an opportunity for the agency to attempt conciliation, are effectively accomplished at the end of the mandated 60 day waiting period. The Court also finds that Congress placed no burden on an ADEA complainant's right to file suit other than the 60 day state and federal waiting periods. Finally, the Court finds that any benefit derived from requiring a complainant to maintain her EEOC charge after expiration of the 60 day waiting period is insufficient to institute such a requirement as a prerequisite to suit.

Therefore, the Court holds that the ADEA complainant's right to file suit vests after the EEOC has had a 60 day opportunity to act on complainant's charge and is not divested by a subsequent withdrawal of the charge from the agency. Accordingly, Ingram's withdrawal of her charge from EEOC has no bearing on her right to file this lawsuit, and Ingram's ADEA claim is properly before this Court.

### B. Definition of "Employee"

Defendant County also argues that Ingram's age discrimination claim should be dismissed because as a matter of law she does not meet the jurisdictional definition of employee under the ADEA. The ADEA defines the term "employee" for purposes of ADEA coverage:

The term "employee" means an individual employed by any employer except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, *or any person chosen by such officer to be on such officer's personal staff,* or an appointee on the policymaking level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. *The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a* State government, governmental agency, or *political subdivision....*

29 U.S.C.A. § 630(f) (1985) (emphasis added). Defendant County emphasizes the "personal staff" exemption of the definition. The County claims that no genuine issue of material fact exists on this point, and that as a matter of law Ingram served on the personal staff of the District No. 3 County Commissioner.

Defendant County correctly points out that a plaintiff's status as an employee is a question of federal law, *Calderon v. Martin County,* 639 F.2d 271, 272–73 (5th Cir. Unit B Mar. 1981), and that the personal staff exemption of the ADEA is identical to that of Title VII. *EEOC v. Reno,* 758 F.2d 581, 584 (11th Cir.1985). Thus, courts have held that for purposes of delineating the personal staff exemption of the ADEA, it is proper to rely on interpretations of the identical language of Title VII. *See, e.g., id.*

The Fifth Circuit has held that under Title VII courts must "look to the 'nature and circumstances of the employment relationship between the complaining individual and the elected official to determine if the [personal staff] exception applies.'" *Teneyuca v. Bexar County,* 767 F.2d 148, 152 (5th Cir.1985) (quoting from *Owens v. Rush,* 654 F.2d 1370, 1375 (10th Cir.1981)). The court identified six factors that may be helpful in analyzing the relationship:

(1) whether the elected official has plenary powers of appointment and removal,

(2) whether the person in the position at issue is personally accountable to only that elected official,

(3) whether the person in the position at issue represents the elected official in the eyes of the public,

(4) whether the elected official exercises a considerable amount of control over the position,

(5) the level of the position within the organization's chain of command, and

(6) the actual intimacy of the working relationship between the elected official and the person filling the position.

*Id.* at 151.

The Court holds that these factors are applicable to cases involving the personal staff exemption of the ADEA, and, therefore, applies them here. As noted in an earlier part of this opinion, the evidence offered by Ingram with regard to the nature of her job responsibilities and interaction with the District No. 3 County Commissioner is uncontroverted. Ingram and her former boss, former District No. 3 County Commissioner Jim Tyson, swear in their affidavits that Ingram was never an administrative assistant. Additionally, Tyson avers that Ingram was not on his personal staff, did not represent him in the eyes of the public, was not privy to his confidential communications and deliberations as an elected official, and "[f]rom the standpoint of working intimacy and confidentiality, ... [was not] within the category of [his] advisors...." Supplemental Affidavit of James W. Tyson at page 2 (Exhibit B to Ingram's Brief in Opposition to the County's Cross–Motion for Summary Judgment). Former County Personnel Director Clemson's testimony as to the general nature of the office manager's position is irrelevant here except that it tells the Court that the position of office manager occupies a high level within the organization's chain of command. Ingram does not dispute that fact except to assert that she never supervised anyone and never functioned as an office manager.

■ The Court holds that there exists no genuine issue of material fact on the issue of whether Ingram is within the ADEA's definition of employee. After having considered the uncontroverted evidence in light of the six factors set out above, the Court holds that Ingram does not fall within the personal staff exception of 29 U.S.C. § 630(f). Furthermore, on the basis of its previous holding that Ingram is a fully-protected civil service employee, the Court holds that according to the plain language of 29 U.S.C. § 630(f) the personal staff exception does not apply to Ingram. The Court, therefore, holds that Ingram is an employee for purposes of the ADEA and may properly rely on that statute as providing a legal cause of action for her claim of age discrimination.

### C. Factual Sufficiency of ADEA Claim

The County argues that Ingram has failed to allege facts sufficient to establish a prima facie case of age discrimination under the ADEA. The County argues further that even if Ingram has adequately alleged a prima facie case, she has alleged no facts supporting her belief that the County's proffered nondiscriminatory reason for her discharge is merely pretextual. The Court disagrees with the County on both points.

■ Ingram has alleged as facts and produced evidence to support the following: (1) she was 52 years old and therefore a member of the protected class at the time of her discharge; (2) she was discharged; (3) she was qualified for the position from which she was discharged; and (4) she was replaced by someone outside the protected class. The Court holds that these allegations are sufficient to establish a prima facie case under the ADEA. *See Fowler v. Carrollton Public Library*, 799 F.2d 976, 983 n. 5 (5th Cir.1986).

■ Ingram has also alleged that the County's proferred nondiscriminatory reason for her discharge is pretextual. Contrary to the County's contention, Ingram has alleged specific facts and produced evidence other than her own subjective opinion in support of her allegation of pretext.

For instance, Ingram has produced an unsigned letter that she found in her personnel file, which purports to be for her signature and in which she asks for a "somewhat less demanding," "more sedentary" job that might be better for her as she "begin[s] to approach retirement age." This letter is written on Dallas County Personnel/Civil Service Department letterhead. Ingram claims that it was written by an employee of the County as part of a scheme developed with Commissioner Price to demote her. This letter alone is sufficient evidence of age bias to withstand Defendant County's Motion for Summary Judgment. The Court holds that Plaintiff Ingram is protected by the ADEA, that she has sufficiently pleaded her claim, and that her claim is properly before this Court. Accordingly, Defendant County's Motion for Summary Judgment on Plaintiff Ingram's ADEA claim is DENIED.

### IV. Breach of Employment Contract

■ Plaintiff Ingram and Defendant County each ask for summary judgment in their favor on Ingram's breach of employment contract claim. Ingram claims that the County breached her employment contract when it unilaterally reclassified her position from Category "C" to Category "A." Because as a Category "C" employee she was protected by the County's civil service system and thus could be fired only for just cause, while as a Category "A" employee she had no such protection, Ingram claims that the unilateral reclassification constituted unlawful impairment of her employment contract. In light of the Court's earlier holding that the County's attempted unilateral reclassification was ineffective, Ingram's breach of employment contract claim is baseless. Defendant County's Motion for Summary Judgment on Ingram's breach of employment contract claim is GRANTED.

### V. The Motions for Sanctions

Plaintiff Ingram filed a Motion for Assessment of Costs and Attorneys Fees Against the County Under FRCP 11, 26(g) & 56(g). Ingram bases her motion on re-

sponses made by the County to Ingram's discovery requests. Ingram points out, and the Court agrees, that many of those responses are contradictory and thereby confusing. The inconsistencies in the responses and between the responses and the eventual delineation of the County's case provided in their cross-motion for summary judgment are especially great with regard to questions propounded by Ingram in an attempt to determine when the County contended that she lost her civil service protection. Without being specific as to which responses violate which of the rules upon which the motion is based, Ingram claims that "the County has signed pleadings, made arguments and filed affidavits in bad faith and/or solely for the purpose of misleading her." Brief in Support of Ingram's Motion for Assessment of Costs at page 6.

The County responds that all of the actions of the County's representatives and its counsel in this suit have been undertaken in good faith and in compliance with the Federal Rules of Civil Procedure. The County claims that any inaccuracies or misstatements of fact resulted from an innocent mistake or misunderstanding of the County's representatives and were not a product of intentional misconduct. The County specifically refutes the inconsistencies alleged by Ingram with regard to the change in her civil service status. Former Dallas County Personnel Director Allen Clemson explains in his affidavit that some of the alleged inconsistencies occurred because Ingram's counsel confused the terminology of the civil service area with that of the wage and hour area.

After carefully considering the evidence and arguments of each of the parties, the Court finds this to be a borderline case. On the one hand, the Court recognizes that strictly speaking Plaintiff Ingram, in her efforts to learn the County's contentions with regard to when and how she ceased to be protected by the civil service regulations, did not ask her questions in exactly the right terms. On the other hand, the Court finds it incredible that after reading Ingram's complaint the County and its representatives upon the advice of counsel did not have a sufficient grasp of Ingram's allegations and the real meaning of her questions to have been able to answer her discovery requests in a more probative manner. In the end, the Court is of the opinion that the County's responses are not sufficiently ill-grounded in fact or improperly motivated to constitute a violation of any of the Federal Rules of Civil Procedure. Plaintiff Ingram's motion for sanctions is DENIED.

After responding to Ingram's motion for sanctions, the County filed its own motion for sanctions claiming that Ingram and her counsel instituted and maintained this suit in bad faith or, alternatively, without sufficient basis in fact or law and, therefore, had violated Federal Rule of Civil Procedure 11. The principal basis, if not the only basis, for the County's charge is its conclusory contention that Ingram had an insufficient basis upon which to maintain suit. Given its holdings on the various issues in this case, the Court holds that Ingram's claims were not without merit. Defendant County's motion for sanctions is DENIED.

### Conclusion

In summary, Plaintiff Ingram's Motion for Summary Judgment on her claim that Defendant County violated her procedural due process rights under the Fourteenth Amendment when it discharged her without notice or a hearing is GRANTED. Plaintiff's Motion for Summary Judgment on her claim that the same acts by the County violated her right to substantive due process under the Fourteenth Amendment is DENIED. Defendant's Motion for Summary Judgment on Plaintiff's age discrimination claim, which she brought under the ADEA, is DENIED. Defendant's Motion for Summary Judgment on Plaintiff's breach of employment contract claim is GRANTED. Plaintiff's intentional infliction of emotional distress claim is dismissed with prejudice. *See* Tex.Civ.Prac. & Rem. Code Ann. § 101.057(2) (Vernon 1986); *City of Amarillo v. Langley*, 651 S.W.2d 906, 918 (Tex.App.—Amarillo 1983, no writ). Plaintiff's claim that Defendant County deprived her of her liberty interest

in her good name and reputation without due process of law is also dismissed with prejudice. *See Paul v. Davis,* 424 U.S. 693, 712, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976). Both parties' motions for sanctions are DENIED.

Thus, the only issues remaining for trial are first, the type and amount of damages that will compensate Plaintiff for injuries caused by Defendant County's unlawful actions in terminating her employment, and, second, Plaintiff's age discrimination claim including the damages, if any, she is due thereunder.

SO ORDERED.