**Rita J. MIDDLETON, Individually and on behalf of the Estate of Jimmy Dewane Middleton, Deceased, and as next friend of Michael Dewane Middleton, a minor, Plaintiff-Appellant,**

v.

**HARRIS PRESS AND SHEAR, INC., A SUBSIDIARY OF AMERICAN HOIST AND DERRICK COMPANY, et al., Defendants-Appellees.**

No. 85–1306.

United States Court of Appeals,
Fifth Circuit.

Aug. 11, 1986.

---

Russell H. McMains, Corpus Christi, Tex., Chapman, Reese & Wiley, Carlyle H. Chapman, Jr., Foster Reese, III, Dallas, Tex., for plaintiff-appellant.

Michael Braden, Carrington, Coleman, Sloman & Blumenthal, Dallas, Tex., for Harris Press.

Before WILLIAMS, JOLLY and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

This is a diversity case applying Texas products liability law. Jimmy Middleton was killed when a fellow employee engaged the hydraulics of an industrial baling machine while Middleton was attempting to clear a jam from its compression chamber. His wife sued the manufacturer of the baler, alleging that the machine was both defectively designed and unreasonably dangerous as marketed. The jury answered special interrogatories adversely to the widow on both issues, who now appeals, alleging that the jury instructions were wrong, and that the judge erred in not admitting evidence of certain proposed industry safety standards and changes to the baler made after the accident. We affirm.

I

This case involves an industrial horizontal baling machine manufactured and sold by Harris Press & Shear to Jimmy Middleton's employer, Willamette Industries, to compress large quantities of scrap corrugated cardboard and other paper products into bales. As originally manufactured and sold, the baker was equipped with 40" hopper walls. A ram powered by two 100 horsepower engines compressed material from the feed area of the hopper into a chamber located under the operator's platform. The operator's control panel was equipped with a key lockout switch that was identified by a warning label instructing the operator to turn off the motors and remove the key whenever the operator entered the gathering area of the baler; the baler instruction manual contained a similar warning. The baler was also equipped with a loud warning bell that sounded

whenever the motors were started, and a ten-second delay allowed anyone in the hopper time to exit. The bells would not sound, however, if the motors were already running and the hydraulics were simply re-engaged after a pause in the baler's operation.

Following purchase, Willamette modified the baler by extending the height of the loading hopper. Because the baler was subject to occasional jams caused by "overcharging" of material that would require the machine operator to enter the hopper and dislodge the jammed material from the compression chamber, Willamette also provided an access door into the extended hopper. Willamette did not add a circuit interrupt device to automatically disengage the machine when the door was opened, but instructed employees not to enter the machine without turning off the motors and removing the lockout key. However, Willamette employees commonly turned the motors off and removed the lockout key only for "heavy" jams; during "light" jams they ordinarily left the motors running and simply disengaged the hydraulics before entering the hopper, in order to save the 30 seconds necessary to prime and restart the engines.

Jimmy Middleton was killed when he went into the hopper to unjam the baler while the motors were running, and a co-worker was told by a fellow employee "to go help Jimmy." Misunderstanding the instruction, and unable to see Jimmy Middleton crouched in the compression chamber, the co-worker activated the hydraulics. The other employee, realizing almost immediately what had occurred, raced to the control panel to reverse the machine, but immediately thereafter discovered Jimmy Middleton's severed torso atop the compression ram in the hopper area.

Middleton's wife, Rita, in her individual capacity, on behalf of her husband's estate, and as next friend of a minor child, brought a diversity action against Harris based on products liability and negligence theories under Texas law. Plaintiff's defective design theory was that access to the gathering and compression areas of the baler should have been controlled by higher hopper walls and a door with interlock circuit interrupts that would automatically turn off the motors when the operator entered the hopper. Plaintiff also alleged that the baler was unreasonably dangerous as sold because Harris did not advise Willamette that if the hopper was extended and equipped with an access door, circuit interrupt devices should also be installed.[1] The jury, in answer to special interrogatories, found that the baler was neither defectively designed nor unreasonably dangerous as sold because of the absence of warnings, and did not reach additional issues of causation, assumption of risk, and contributory negligence.

## II

In reviewing plaintiff's claims regarding erroneous jury instructions, two standards of review are relevant. Where timely objection is made to a jury instruction as given, we will reverse "[i]f the charge as a whole leaves us with substantial and ineradicable doubt whether the jury has been properly guided in its deliberations." *Pierce v. Ramsey Winch Co.*, 753 F.2d 416, 425 (5th Cir.1985) (quoting *McCullough v. Beech Aircraft Corp.*, 587 F.2d 754, 759 (5th Cir.1979)). We will not reverse "if we find, based upon the record, that the challenged instruction could not have affected the outcome of the case." *Id.* (quoting *Bass v. USDA*, 737 F.2d 1408, 1414 (5th Cir.1984)). In contrast, where no timely objection is made to a jury instruction, the claimed error cannot be reviewed on appeal unless giving the instruction was "plain error" so fundamental as to result in a miscarriage of justice. Fed.R.Civ.P. 51; *Whiting v. Jackson State University*, 616 F.2d 116, 126 (5th Cir.1980).

---

**1.** Middleton later joined Willamette Industries, Inc., alleging gross negligence, though the employer was immune from actual damages as a subscriber to the Texas Workers' Compensation Act. Tex.Rev.Civ.Stat.Ann. art. 8306 § 3(a) (Vernon Supp.1986). Willamette settled its liability for exemplary damages during the plaintiff's case in chief.

—A—

■ Plaintiff timely objected to only two of the jury instructions which she now claims were incorrect. In the first, the judge stated that it was the defendant's contention that Jimmy Middleton assumed the risk of the use of the baler, and then stated the three elements of assumption of risk. Because in *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414 (Tex.1984), the Texas Supreme Court abolished the doctrine of assumption of risk, and replaced it with a comparative negligence approach, plaintiff argues that instructing about assumption of risk was reversible error.

Any error in this instruction, however, was harmless, because the jury never reached the issue of whether Jimmy Middleton assumed the risk. Due to the sequence of the interrogatories, the jury was required to answer the interrogatory concerning assumption of risk only if it first found that the baler was defectively designed or unreasonably dangerous when sold, and in addition that one of these was a producing cause of death. Because the jury found no design or marketing defect, it never reached the issue of assumption of risk, and including the instruction "could not have affected the outcome of the case." *Pierce*, 753 F.2d at 425.

Plaintiff argues that the placement in the charge of the instruction on assumption of risk may have "tainted" the jury's answers to the design and marketing defect interrogatories, and that it may have misled the jury even though the jury was never required to answer the assumption of risk interrogatory. Plaintiff speculates that the jury may have improperly considered assumption of risk as a complete defense in answering the threshold interrogatories. Viewing the charge as a whole, we are not persuaded by this speculation. Neither the court's charge nor the closing arguments suggested to the jury that it could find that the baler was not defectively designed or

marketed if Jimmy Middleton assumed the risk of injury by entering the baler with the engines running. Indeed, viewed in its entirety, the charge instructed the jury to first answer the interrogatories concerning defect, and then to consider separately the defenses asserted by Harris, including assumption of risk and whether the baler had been substantially modified after its sale to Willamette.[2]

■ Plaintiff's second objection to the jury instructions concerned the submission of the issue of Willamette's contributory negligence. Plaintiff cites *Varela v. American Petrofina Co. of Texas, Inc.*, 658 S.W.2d 561 (Tex.1983), and *Teakell v. Perma Stone Co.*, 658 S.W.2d 563 (Tex. 1983), which held that the negligence of an immune employer cannot be considered for purposes of contribution or indemnity. We do not decide whether this proscription survived *Duncan's* apparent holding that fault is to be allocated among *all* responsible parties, since the instruction, if erroneous, was also harmless. Including the issue of employer negligence could not have had any effect on the jury's answers to the dispositive issues of defect and failure to warn.

—B—

Plaintiff's other questions about the charge were not brought to the attention of the trial judge. First, plaintiff argues that though her strict products liability claim for marketing defect was submitted to the jury, the trial court erroneously refused to also instruct the jury on a negligence theory of recovery. A transcript of the charge conference between the attorneys and the district court, in which plaintiff allegedly objected to the omission of her negligence claims, is unavailable because the reporter's notes of the conference were lost. Harris did move to supplement the record, and the district court entered an order re-

2. We also find it relevant that although *Duncan* abolished assumption of risk as a formal defense, conduct which may be characterized as assumption of risk may still be considered in allocating causation under a comparative negligence approach; hence, to the extent the instruction simply highlighted Jimmy Middleton's own negligence, it could not have been prejudicial.

flecting its recollection of the events. It is apparent from that order that it was at plaintiff's request that the issue was submitted only as a strict liability issue, and plaintiff cannot now complain on appeal that her own request was improperly granted.

Plaintiff's second claimed error in the jury instructions, to which there was no objection, was that the court's instructions erroneously limited her theory of marketing defect to consideration of whether Harris had *actual* knowledge of the precise manner in which the baler would be altered. However, contrary to plaintiff's assertion, the jury was not limited to consideration of Harris's actual knowledge, but was instructed properly that it should consider what Harris "knew or ... *should have known*" (emphasis added).

■ Plaintiff next argues that an instruction regarding "sole cause" was erroneously given, *see First International Bank v. Roper Corp.*, 686 S.W.2d 602 (Tex. 1985), and that the jury was improperly instructed on the defense of "substantial change." Because the jury found that the baler was neither defectively designed nor unreasonably dangerous as marketed, it did not reach the issues of causation or substantial change, and any flaw in these instructions was not plain error.

■ The jury was also instructed that "there is no duty to warn a group or class of users who possess a special knowledge or expertise concerning the product's dangerous characteristics if the risks are known to them." Plaintiff argues that this instruction was inconsistent with the abolition of the "no-duty" concept from Texas tort law. *See Dixon v. Van Waters and Rogers*, 682 S.W.2d 533 (Tex.1984); *Parker v. Highland Park, Inc.*, 565 S.W.2d 512 (Tex.1978). The no-duty rule was characterized by the Texas Supreme Court in

*Dixon* as an "oddity" that placed the burden on a plaintiff to "negate his own knowledge and his own appreciation of a danger." 682 S.W.2d at 533. However, the abolition of this rule did not affect the substantive standards governing the existence of a duty to warn. As stated in *Dixon*, "[a] plaintiff [no longer has] the burden to prove and obtain findings that he lacked knowledge and appreciation of a danger; he must, however, prove the defendant had a duty and breached it." 682 S.W.2d at 534. Whether there is a duty to warn and the adequacy of warnings given must be evaluated in connection with "the knowledge and expertise of those who may reasonably be expected to use or otherwise come in contact with the product as it proceeds along its intended marketing chain." *Martinez v. Dixie Carriers, Inc.*, 529 F.2d 457, 465–66 (5th Cir.1976). The district court's instructions on duty to warn therefore did not constitute error, and certainly not plain error.

### III

■ Middleton also complains that the court improperly excluded two proffered items of evidence: (1) evidence that following the accident Willamette modified the baler by adding interlocked access doors, and (2) an unadopted draft of the ANSI standards applicable to this equipment.

Federal Rule of Evidence 407 provides that evidence of measures taken subsequent to an accident are not admissible to prove negligence or culpable conduct in connection with the accident.[3] However, we have held that "neither the text of rule 407 nor the policy underlying it excludes evidence of subsequent repairs made by someone other than the defendant." *Grenada Steel Industries v. Alabama Oxygen Co.*, 695 F.2d 883, 889 (5th Cir.1983); *see also Dixon v. International Harvester*

---

3. Fed.R.Evid. 407 provides in full:

When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in con-

nection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

*Co.,* 754 F.2d 573, 583 (5th Cir.1985). The modifications to the baler in this case were not made by Harris, but by Middleton's employer, Willamette, which had been dismissed from the suit when the issue of admissibility arose. Accordingly, rule 407 would not have barred admission of modifications to the baler by Willamette, a non-defendant.

Nevertheless, the district court's exclusion of the evidence was proper under Fed. R.Evid. 403. We have held in several product liability cases involving the issue of defective design that evidence of subsequent changes by third parties is properly excludable because of its tendency "to confuse the jury by diverting its attention from whether the product was defective at the relevant time [i.e. the time of manufacture] to what was done later." *Grenada Steel,* 695 F.2d at 888, 889; *see also Alexander v. Conveyors & Dumpers, Inc.,* 731 F.2d 1221, 1230 (5th Cir.1984); *cf. Ward v. Hobart Manufacturing Co.,* 450 F.2d 1176, 1182–84 (5th Cir.1971).

Moreover, though plaintiffs argue that the remedial modifications were relevant to the issue of whether they were feasible at the time of manufacture, feasibility was not disputed by Harris. In the pre-trial order, Harris proposed the following stipulation:

> Under the circumstances in which Willamette Industries, Inc., installed and used the baler, it was feasible (in the sense of being physically possible) to add a hopper extension, access door, and interrupt device to the baler.

During trial, there was testimony that Harris had in fact installed circuit interrupt devices upon request for owners of other balers. Though Harris contended that circuit interrupt devices were unreliable and not a safety device of first choice, the feasibility of installing them was not called into dispute. The trial judge therefore properly excluded the evidence of Willamette's modifications to the baler after the Middleton accident.

■ Finally, plaintiff complains about the exclusion of an unadopted draft of safety standards for baling equipment proposed by the American National Standards Institute. Excluding this evidence because the standards had not yet been adopted in final form by the manufacturers was not an abuse of discretion. There was extensive testimony as to the matters contained in the proposed standards, and the relevant standards in the draft appear, in pertinent part, to be substantially similar to the ANSI standards adopted in 1982, which were admitted into evidence. The evidence was at best cumulative, and its exclusion harmless.

The judgment for the defendant is AFFIRMED.