70 F.3d 129
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
KASPAR WIRE WORKS, INC., Plaintiff/Cross-Appellant,
v.
K-JACK ENGINEERING CO., INC., Defendant-Appellant,
and
Micro-Magnetic Liquidation Trust, Third-Party Defendant.
 Nos. 95-1095, 95-1115.
 United States Court of Appeals, Federal Circuit.
 Nov. 9, 1995.
 
 Before MAYER, Circuit Judge, SMITH, Senior Circuit Judge, and MICHEL, Circuit Judge.
 DECISION
 MICHEL, Circuit Judge.
 
 
 1
 K-Jack Engineering Co. ("K-Jack") appeals from the March 21, 1994 judgment of the United States District Court for the Southern District of Texas, No. V-92-011, entered pursuant to a jury verdict holding K-Jack liable to Kaspar Wire Works, Inc. ("Kaspar") for infringement of U.S. Patent No. 4,369,442 ("the '442 patent"), awarding damages of $217,652.00 to Kaspar for infringement of the '442 patent, permanently enjoining K-Jack from infringing the '442 patent, holding K-Jack's U.S. Patent No. 4,049,106 ("the '106 patent") unenforceable due to inequitable conduct, and holding that Kaspar had not violated the federal antitrust laws. K-Jack also appeals from the district court's March 10 order in the same action granting Kaspar partial attorney fees in connection with unfair competition and unenforceability claims. The district court denied K-Jack's post-verdict motions for judgment as a matter of law ("JMOL") or a new trial on November 4, after which this appeal was timely filed.
 
 
 2
 Kaspar cross-appeals from the March 21 judgment to the extent that K-Jack was held not to have infringed its U.S. Patent No. 4,216,461 ("the '461 patent") and that Claim 1 of its U.S. Patent No. 4,306,219 ("the '219 patent") was held invalid under 35 U.S.C. Sec. 102(e) (1988).
 
 
 3
 Because K-Jack's assignments of legal error are unavailing, the jury's verdicts are supported by substantial evidence and in accordance with law, and Kaspar's contentions on cross-appeal were not properly preserved through timely objection and post-trial motion, we affirm.
 
 DISCUSSION
 Standard of Review
 
 4
 Judgment as a matter of law is appropriate when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed.R.Civ.P. 50(a)(1). We review a district court's decision on a motion for JMOL de novo, reapplying the JMOL standard. Markman v. Westview Instruments, Inc., 52 F.3d 967, 975, 34 USPQ2d 1321, 1326 (Fed.Cir.1995) (in banc). Specifically, where a party moves for JMOL after trial of the case to a jury, we must determine whether there exists evidence of record on the basis of which a jury could reasonably have returned the verdicts under review consistent with the law governing those verdicts. Id. (quoting Jamesbury Corp. v. Litton Indus. Prods., Inc., 756 F.2d 1556, 1560, 225 USPQ 253, 257 (Fed.Cir.1985)); Read Corp. v. Portec, Inc., 970 F.2d 816, 821, 23 USPQ2d 1426, 1431 (Fed.Cir.1992).
 
 Analysis
 K-Jack's Appeal
 
 5
 K-Jack raises five issues in its appeal. First, K-Jack maintains that there was not substantial evidence to support the jury's finding that its Mech and Reader, two components in its Comp-U-System, infringe Claim 2 of the '442 patent.[1] Second, K-Jack contends that, even if there were substantial evidence to support the jury's infringement finding, the jury's infringement damages award must be vacated as contrary to law, based as it was on the sales of Mechs alone, and the permanent injunction must be vacated as impermissibly broad. Third, it asserts that erroneous jury instructions render the unenforceability verdict fatally flawed. Fourth, it maintains that there was not substantial evidence to support the jury's finding that Kaspar did not violate the federal antitrust laws. Fifth, and finally, K-Jack contends that the district court abused its discretion in awarding Kaspar attorney fees in connection with the unenforceability and unfair competition claims. We address each of these issues in turn.
 
 
 6
 1. Infringement of the '442 patent.--K-Jack's primary contention on appeal is that there was not substantial evidence to support the jury's verdict that its Mech and Reader infringe Claim 2 of the '442 patent when the relevant terms of the claim are correctly interpreted. Specifically, according to K-Jack, the "output transactions" limitation in part 1.A of Claim 2 refers to returns of change, and the "transaction processing circuitry" limitation of part 2.A of Claim 2 requires that the portable collection unit be able to perform mathematical calculations. Since it is undisputed that K-Jack's Mech does not return change and its Reader does not perform mathematical calculations, the jury's infringement verdict cannot be sustained if either of K-Jack's interpretations of the critical phrases of Claim 2 is correct. Neither is.
 
 
 7
 Claim interpretation, a question of law, entails consideration of the patent's claims, specification, and, if in evidence, prosecution history. Markman, 52 F.3d at 979-80, 34 USPQ2d at 1329-30. Claim 2.1.A requires that the "counter-monitor-controller" component of the claimed system include "means for sensing input and output transactions." Neither "transactions" nor "output transactions" is further defined in Claim 2 or any other claim. The specifications indicate, however, that these terms have a broad meaning. For example, the abstract lists "coin transactions," "inventory control," "service and transaction time checks," and "dispensing" among the counter's functions. These functions are also among those further described in both the "Background" and "The Invention" sections of the specification. The enumeration of more specific functions in the remaining claims of the '442 patent provides additional support for the conclusion that Claim 2 relates to "output transactions" in a broad sense. Finally, and perhaps most importantly, Kaspar demonstrates that the prosecution history of Claim 2 included a broadening of the claim from a recitation of "means for sensing coin input and output transactions" to a recitation of "means for sensing input and output transactions." (Emphasis added.) This broadening of the claim flies in the face of K-Jack's contention that the phrase "output transactions" refers only to the return of change (i.e., a coin output transaction). Kaspar presented substantial evidence to show that K-Jack's Mech senses and stores a signal denoting the firing of the solenoid that controls the opening of the vending machine door for newspaper removal, which we conclude is an "output transaction" within the meaning of Claim 2. Such is sufficient to support the jury's verdict of infringement of Claim 2 as it relates to the Mech.
 
 
 8
 Claim 2.2.A requires the portable collection unit to have "transaction processing circuitry." Again, this phrase is not defined in Claim 2 or in any other claim. The specifications do not shed light on the meaning of the phrase, but Claim 16's recitation of "a detachable, portable, microprocessor collection unit ... adapted to perform calculations" militates strongly against K-Jack's proposed interpretation, according to which the collection unit recited in Claim 2 is required to perform calculations. Similarly, Claim 6, which depends from Claim 2, adds the limitation of a "portable collection unit [that] includes a microprocessor." In short, there is simply no support for K-Jack's contention that "transaction processing circuitry" is not, as Kaspar maintains, any circuitry in the portable collection unit that processes the transaction data received from the counter-monitor-controller. Kaspar presented substantial evidence to show that K-Jack's Reader includes circuitry for processing data received from the Mech, which we conclude is "transaction processing circuitry" within the meaning of Claim 2. Such is sufficient to support the jury's verdict of infringement of Claim 2 as it relates to the Reader.
 
 
 9
 2. The damages award and injunction.--According to K-Jack, the jury's damage award is legally incorrect because "the jury found infringement based on the sale of the Mech alone and awarded damages on the sales of just the Mech." Thus, K-Jack contends, even if the Comp-U-System were properly found to infringe the '442 patent when considered as a whole, the damages award must be vacated. In addition, K-Jack contends that Kaspar failed to support the product demand predicate of an award of lost profits with substantial evidence. Both challenges to the damages award are unavailing.
 
 
 10
 We review the quantum of the jury's damages award for substantial evidence, while we review the court's choice of a methodology for calculating lost profits under the "abuse of discretion" standard. Smithkline Diagnostics, Inc. v. Helena Labs. Corp., 926 F.2d 1161, 1164-65, 17 USPQ2d 1922, 1924-25 (Fed.Cir.1991). As Kaspar sets forth in detail, its expert witness on the question of damages estimated lost profits according to a number of simplifying assumptions, one of which was to use the number of Mechs sold as an index of the lost profits. While it is true that K-Jack's Mech, considered by itself, cannot infringe Claim 2 of the '442 patent, the use of the Mech as an index for the calculation of Kaspar's lost profits does not appear to be an abuse of discretion in light of the uncontested fact that the Reader is able to service approximately fifty Mechs. Taking this methodology as the basis for the award, the award itself is supported by substantial evidence and will remain undisturbed.
 
 
 11
 We review the scope of the district court's injunction under the "abuse of discretion" standard. Joy Technologies, Inc. v. Flakt, Inc., 6 F.3d 770, 772, 28 USPQ2d 1378, 1380 (Fed.Cir.1993). The district court's judgment enjoins K-Jack as follows:
 
 
 12
 The Court further ORDERS that K-Jack ... [is] permanently enjoined from further acts of infringement as follows:
 
 
 13
 1. From infringing Claim 2 of [the '442 patent]; and
 
 
 14
 2. From advertising, promoting, making, using, selling, leasing, loaning, reconstructing, or shipping the Comp-U-System or component parts of the Comp-U-System, including the Comp-U-Mech and/or Comp-U-Reader, or software relating thereto.
 
 
 15
 K-Jack contends that the injunction is overly broad insofar as "there was no evidence that every purchaser of a Mech also purchased [or leased] a Reader." Though K-Jack nowhere develops its challenge to the scope of the injunction at any length, K-Jack's position appears to be that the district court may do no more than is strictly necessary to prevent further acts of direct infringement by the enjoined party. The district court's injunctive power in patent cases, exercised pursuant to statute,[2] is not so limited. See, e.g., id. at 777, 28 USPQ2d at 1384-85 ("The new injunction may enjoin Flakt's acts which constitute direct, induced or contributory infringement during the term of the patent ... [as well as such] additional conditions [as] are necessary to ensure that Flakt does not enable direct infringement during the patent term by others of which Joy might be unaware...."). Discerning no abuse of discretion in the scope of the district court's injunction, we leave it undisturbed.
 
 
 16
 3. Instructions on unenforceability.--K-Jack seeks to undermine the unenforceability verdict by challenging the correctness of the jury instructions on this issue. Specifically, K-Jack contends that the district court committed prejudicial error by failing to include a "cumulative references are not material" instruction in the jury charge. Kaspar demonstrates, however, that, consistent with the local rules of the district court, K-Jack helped to formulate the unenforceability instructions that were incorporated into the pre-trial order and given to the jury, failing to raise its objection to the lack of a cumulativeness instruction until after the jury had already retired to deliberate.
 
 
 17
 The question whether a jury instruction not timely objected to (i.e., "before the jury retires to consider its verdict," Fed.R.Civ.P. 51) may be challenged on appeal presents a question of regional circuit law. Lummus Indus. v. D.M. & E. Corp., 862 F.2d 267, 270, 8 USPQ2d 1983, 1985 (Fed.Cir.1988). Under the law of the United States Court of Appeals for the Fifth Circuit, "where no timely objection is made to a jury instruction, the claimed error cannot be reviewed on appeal unless giving the instruction was 'plain error' so fundamental as to result in a miscarriage of justice." Middleton v. Harris Press & Shear, Inc., 796 F.2d 747, 749 (5th Cir.1986). We discern no such "plain error" in the district court's instructions to the jury on the elements of unenforceability, especially in light of K-Jack's role in helping to formulate the instructions it now seeks to undermine. See Sierra Club v. Yeutter, 926 F.2d 429, 438 (5th Cir.1991) ("Because it is a cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by [that] party, we are not inclined to rule in the government's favor when, as here, it articulated to the court that it sought review under the standard it now challenges.") (internal quotation omitted). The unenforceability verdict will thus remain undisturbed.
 
 
 18
 4. Finding of no antitrust violation.--K-Jack based its antitrust counterclaim to Kaspar's patent infringement suit on the allegation that Kaspar sought to monopolize the market in newspaper vending machines by acquiring a number of patents in the area of electronic control systems for such machines. The jury was instructed, quite correctly, that K-Jack was required to prove, inter alia, that Kaspar had dominant market power in the relevant market prior to the purchase of the patents in order to prevail on its claim. See, e.g., SCM Corp. v. Xerox Corp., 645 F.2d 1195, 1205 (2d Cir.1981) ("[A] Sec. 2 violation will have occurred where ... the dominant competitor in a market acquires a patent covering a substantial share of the same market that he knows when added to his existing share will afford him monopoly power.") (emphasis added), cert. denied, 455 U.S. 1016 (1982). In addition, the jury was charged with the task of defining the relevant market before determining whether Kaspar had attempted to monopolize that market through patent acquisitions. K-Jack now challenges the jury's verdict in Kaspar's favor as unsupported by substantial evidence.
 
 
 19
 Kaspar responds that there was substantial evidence to support the jury's presumed finding that the relevant market is not, as K-Jack contends, the market for newspaper vending racks in general, but is instead the market for electronically controlled newsracks. K-Jack has not, for its part, overcome Kaspar's response, and we are persuaded that there was substantial evidence to support such a finding. In light of the uncontested fact that Kaspar had only a 6% share in the electronic newsrack market, the antitrust verdict in favor of Kaspar must stand.
 
 
 20
 5. Attorney fees.--Finally, K-Jack contends that the district court's award of attorney fees to Kaspar is defective both (a) as a matter of law for lack of an express finding of exceptionality with respect to the unenforceability claim, or bad-faith with respect to the unfair competition claims, and (b) for lack of sufficient documentary support in the record for the amount awarded. Careful review of the affidavits filed by Kaspar's counsel on the question of fees belies the latter contention. Our holding in Carroll Touch, Inc. v. Electro Mechanical Systems, Inc., according to which express findings of exceptionality or bad faith are not necessary where the record provides a sufficient basis to review the award, forecloses acceptance of the former contention. 15 F.3d 1573, 1584, 27 USPQ2d 1836, 1845 (Fed.Cir.1993). The award of fees will stand. Kaspar's Cross-Appeal
 
 
 21
 Kaspar cross-appeals from the judgment insofar as K-Jack was held not to have infringed Claim 1 of the '461 patent and Claim 1 of the '219 patent was held to be invalid, attacking the sufficiency of the evidence to support these verdicts. Kaspar concedes, however, that it never moved for JMOL under Rule 50 with respect to either of these jury verdicts. The omission is a fatal one. As we clearly held in Biodex Corp. v. Loredan Biomedical, Inc., "we cannot review the sufficiency of the evidence [for a given finding] after a jury verdict absent some post-verdict disposition, either by a deferred ruling or upon a post-verdict motion." 946 F.2d 850, 862, 20 USPQ2d 1252, 1261 (Fed.Cir.1991), cert. denied, 504 U.S. 980 (1992). The sufficiency of the evidence supporting the factual predicates of the noninfringement and invalidity verdicts against Kaspar is thus immune from review.
 
 
 22
 Kaspar's failure to move for JMOL at the close of the evidence or after the return of the verdict does not, of course, bar an appeal on "any ... issue which was the province of the court rather than the jury and to which [Kaspar] made a timely objection at trial." Jurgens v. McKasy, 927 F.2d 1552, 1557, 18 USPQ2d 1031, 1036 (Fed.Cir.) (emphasis added), cert. denied, 502 U.S. 902 (1991). Kaspar, however, made no such timely objection regarding the interpretation of the claims in suit. Indeed, far from objecting, Kaspar encouraged the district court to submit the questions of claim interpretation in the case to the jury, relying on the so-called "McGill line of cases" subsequently disavowed in Markman. See Markman, 52 F.3d at 976-79, 34 USPQ2d at 1327-29 (discussing McGill and its progeny). Having freely pursued this strategy for resolving claim interpretation disputes at trial, Kaspar is not now in a position to seek redress from an unwelcome defeat.
 
 
 23
 Discerning no residual "manifest injustice" in the conduct of the trial or in our refusal to reach the lawfulness of the noninfringement and invalidity verdicts for the first time on appeal, Braun Inc. v. Dynamics Corp., 975 F.2d 815, 821 n. 12, 24 USPQ2d 1121, 1126 n. 12 (Fed.Cir.1992), we reject Kaspar's cross-appeal.
 
 CONCLUSION
 
 24
 Having found no reversible error, we affirm the judgment and fee award of the district court.
 
 COSTS
 
 25
 Each party to bear its own costs.
 
 
 26
 MAYER, Circuit Judge, dissents and would vacate and remand.
 
 
 
 [1]
 Claim 2 of the '442 patent is as follows:
 
 
 [2]
 A system for monitoring, testing, auditing and controlling a vending machine, coin changer and the like, comprising:
 
 
 [1]
 A counter-monitor-controller, including:
 A. means for sensing input and output transactions;
 B. means for converting the sensed transactions into signal pulses;
 C. a plurality of microelectronic circuit registers to receive the signal pulses, including:
 i. internal totalling registers for counting and monitoring transactions;
 ii. memory registers for storing the transactions; and
 iii. output registers for outputting the transactions; and,
 
 
 [2]
 A portable collection unit for receiving transaction information from the memory registers, the collection unit being adapted to serve a plurality of vending machines, and including:
 A. transaction processing circuitry; and,
 B. input and output means;
 the portable collection unit being adapted for access and interrogation of the counter-monitor-controller for data contained in the memory registers, and to store the transaction information in a plurality of memory registers for subsequent release.
 Col. 8, 11. 11-37.
 
 
 [2]
 Section 283 of Title 35 provides that a district court "may grant injunctions ... to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. Sec. 283 (1988) (emphasis added)